[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 30, 2002
THOMAS K. KAHN
CLERK

No. 01-11072

D. C. Docket No. 00-01662 CV-SH

PATRICIA ESFELD,
DONALD ESFELD, her husband,

Plaintiffs-Appellants,

versus

COSTA CROCIERE, S.P.A.,
a foreign corporation doing business
in Miami-Dade County, Florida,

Defendant-Appellee.

No. 01-11073

D. C. Docket No. 00-01661 CV-SH

ELEANOR COHON,
JULIAN COHON, her husband,

Plaintiffs-Appellants,

versus

COSTA CROCIERE, S.P.A.,
a foreign corporation,

                                                            Defendant-Appellee.

                              _____

                              No. 01-11074

                              _____

                    D. C. Docket No. 99-01914 CV-SH

BELLE BESTOR,
STANLEY BESTOR, her husband,

                                                            Plaintiffs-Appellants,

        versus

COSTA CROCIERE, S.P.A.,
a foreign corporation doing business
in Miami-Dade County, Florida,

                                                            Defendant-Appellee.

                              _____

             Appeals from the United States District Court
                   for the Southern District of Florida

                              _____

                          **(April 30, 2002)**

2

Before BIRCH and WILSON, Circuit Judges, and DOWD[*], District Judge.

BIRCH, Circuit Judge:

Plaintiff-Appellants Belle and Stanley Bestor, Eleanor and Julian Cohon, and Patricia and Donald Esfeld challenge the district court's dismissal of their diversity suits brought against Costa Crociere, S.P.A. ("Costa"), for personal injuries that they sustained while on a guided van tour of Vietnam. The question on appeal is whether, under the Erie[1] doctrine, state or federal law on *forum non conveniens* should apply in diversity cases. Since we disagree with the district court's conclusion that state law should apply, we REVERSE.

## I. BACKGROUND

A. The Automobile Accident in Vietnam

These consolidated cases arise out of an accident that occurred during a guided van tour through the Da Nang area of Vietnam. Appellants are three elderly married couples who were injured in the accident, which occurred in January of 1994. All three couples are United States citizens, the Bestors residing in the State of California, and the Cohons and Esfelds residing in the State of Washington. At the time of the accident, the Appellants were on a Western Pacific

---

[*]Honorable David D. Dowd, Jr., U.S. District Judge for the Northern District of Ohio, sitting by designation.

[1]Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938).

cruise that had begun in Singapore and was set to terminate in Hong Kong. The cruise ship upon which they were traveling, the *Ocean Pearl*, was owned and operated by Costa.

The three couples had contracted with Costa in 1993 to take the 13-night cruise of the Western Pacific aboard the *Ocean Pearl*. Although Costa is an Italian corporation,[2] the Appellants have argued throughout this litigation that all of Costa's marketing, advertising, and sales for the United States are done through an office in Miami with over 110 employees. These marketing and sales activities, the Appellants assert, generate between 30,000 and 52,000 United States customers per year. They also argue that Costa advertises in all major United States markets, runs an Internet site from Miami, and issues cruise brochures that list Miami as its address. According to the Appellants, the advertising was successful with respect to them, for they contracted for the Western Pacific cruise only after receiving uninvited solicitations in the United States from Costa, through American travel agents. The travel agents booked the cruise for them, and arrangements for the trip then were made through a company affiliated with Costa that was located in South Florida. It is as a result of these Miami-based sales activities by Costa, the

---

[2]After the accident in this case, Costa was acquired in part by Carnival Corporation, which is headquartered in Miami, Florida.

Appellants maintain, that they contracted for the Western Pacific cruise that took them to Vietnam.

The 13-night cruise upon the *Ocean Pearl* began smoothly, but events changed for the worse on or about 19 January 1994, when the cruise ship was docked in the Vietnam port of call. The Appellants made arrangements through Costa staff to take a guided van tour into the Da Nang area. The Appellants allege that they paid Costa for the excursion and that, as a result, Costa staff made all the necessary preparations for the tour, including selection of a van driver. During the tour, the van driver lost control of the vehicle, causing the vehicle to slam into an embankment and to roll over into a ditch. Severely injured, the Appellants discontinued the rest of their cruise trip. They then returned home to the United States for medical treatment.

B. The Florida State Court Proceedings

After returning to the United States, the Bestors, the Cohons, and the Esfelds filed separate personal injury actions against Costa in the state court in and for Miami-Dade County, Florida.[3] Costa moved to dismiss the three lawsuits based on

---

[3]The Appellants sued several other entities as well, but none of these entities were parties to the subsequent federal litigation at issue in this appeal.

the doctrine of *forum non conveniens*,[4] but the trial court denied the motion in each case. Costa filed an interlocutory appeal to challenge the denial of its motion in the Bestors' case, but it chose not to file an appeal in either the Cohons' case or the Esfelds' case. On appeal, Florida's Third District Court of Appeal (the "Third District") reversed the trial court, concluding that the Bestors' case should be dismissed on *forum non conveniens* grounds. See Pearl Cruises v. Bestor, 678 So. 2d 372 (Fla. Dist. Ct. App. 1996). The Third District ruled that Italy provided a more proper forum for the litigation, since Costa had consented to the jurisdiction of the Italian courts and had agreed to waive reliance on any statute of limitations. The Third District stated in conclusion that the Bestors were "free to bring suit in any other jurisdiction which [would] entertain it." Id. at 373.

In its ruling, the Third District relied on Kinney System, 674 So. 2d at 93, in which the Florida Supreme Court adopted federal *forum non conveniens* law as the appropriate standard for Florida state courts. In the Bestors' case, however, the

---

[4]*Forum non conveniens* is an ancient common law doctrine that permits a court to decline jurisdiction over a case, even if personal jurisdiction and venue are otherwise proper, when there is a more convenient forum for the case to be litigated. See American Dredging Co. v. Miller, 510 U.S. 443, 448, 114 S. Ct. 981, 985 (1994); Charles A. Wright et al., Federal Practice and Procedure, § 3828 at 278 (2d ed. 1986). The doctrine has been adopted by Florida, and the Florida Supreme Court has broadened the scope of its application over time. Compare Houston v. Caldwell, 359 So. 2d 858, 861 (Fla. 1978) (holding that Florida's *forum non conveniens* doctrine does not apply in suits where either party is a Florida resident), with Kinney Sys., Inc. v. Continental Ins. Co., 674 So. 2d 86, 93 (Fla. 1996) (overruling Houston and adopting the more expansive federal *forum non conveniens* doctrine as the state standard).

6

Third District applied that standard in a manner different from how federal courts have applied it. Specifically, the Third District, in addressing the *forum non conveniens* issue, focused on *Florida's* connection to and interest in the case, concluding that the Bestors' lawsuit had "no meaningful relationship to Florida whatever" and that "Florida's interests in [the] litigation [were] next to non-existent." Bestor, 678 So. 2d at 372. In contrast, federal courts, in the *forum non conveniens* context, do not focus on the connection between the case and a particular state, but rather on the connection of the case to the United States as a whole. See La Seguridad v. Transytur Line, 707 F.2d 1304, 1308 (11th Cir. 1983) (focusing on the relation between the claims and issues raised by the plaintiffs and the United States). Thus, unlike a federal court, the Third District dismissed the Bestors' lawsuit without considering whether the suit had any important connections with a United States jurisdiction located beyond Florida's borders.

Upon dismissal of their lawsuit, the Bestors petitioned the Florida Supreme Court for review, but their petition was denied. See Bestor v. Pearl Cruises, 689 So. 2d 1068 (Fla. 1997). With the Bestors' case successfully dismissed, Costa renewed its motion to dismiss on *forum non conveniens* grounds in the two cases brought by the Cohons and the Esfelds, respectively. The trial court again denied the motions. The court reasoned that since Costa could have filed an interlocutory

7

appeal from the denial of its first motion in the Cohons' and the Esfelds' cases, Costa had waived its *forum non conveniens* objection.

The Third District consolidated the suits of the Cohons and the Esfelds on appeal and reversed the trial court, concluding that its *forum non conveniens* analysis in the Bestors' case was controlling. See Pearl Cruises v. Cohon, 728 So. 2d 1226 (Fla. Dist. Ct. App. 1999) (per curiam). In reaching this result, the Third District specifically noted that in the *forum non conveniens* context, Florida courts, unlike federal courts, are only permitted to consider the contacts that a lawsuit has with the State of Florida, given that "Florida courts' territorial jurisdiction is confined to the state boundaries." Id. at 1228 n.*; see also Fla. R. Civ. Pro. 1.061 (explaining that "[a]n action may be dismissed on the ground that a satisfactory remedy may be more conveniently sought in a jurisdiction other than *Florida*") (emphasis added). The Third District concluded by stating that "[a]s in *Bestor*, the plaintiffs [were] free to refile in Italy or in any other jurisdiction which [would] entertain the cases." Cohon, 728 So. 2d at 1228. The Florida Supreme Court then denied the petition of the Cohons and the Esfelds for review. See Cohon v. Pearl Cruises, 744 So. 2d 453 (Fla. 1999).

C.  The Federal District Court Proceedings

   1.  The District Court's *Forum Non Conveniens* Decision

8

The Florida Supreme Court having denied review, the Bestors filed a diversity action against Costa in the United States District Court for the Southern District of Florida, alleging the same personal injury torts raised in the Florida state court proceedings.[5] Costa responded by filing a motion to dismiss on several grounds. Among other things, Costa asserted in its motion that the Bestors' federal lawsuit should be dismissed based either on the doctrine of collateral estoppel or on the doctrine of *forum non conveniens*. The district court, in an order written by Chief Judge Edward B. Davis, denied the motion to dismiss.

In its order, the district court first turned to the collateral estoppel issue. The court noted that under Florida law, collateral estoppel bars parties from relitigating issues that already have been decided in a previous lawsuit only if there are identical parties and issues in both lawsuits. See West Point Constr. Co. v. Fidelity & Deposit Co. of Maryland, 515 So. 2d 1374, 1376 (Fla. Dist. Ct. App. 1987). The district court concluded that the *forum non conveniens* issues raised in the previous Florida state case and in the instant federal diversity case were not identical. The court reached this conclusion because Florida's Third District, in its *forum non conveniens* analysis, focused on the connections between the Bestors' suit and the

_____

[5]The Cohons and the Esfelds each filed separate federal lawsuits against Costa. At the time the district court initially ruled on the *forum non conveniens* issue in the Bestors' case, the Cohons and Esfelds had not yet filed their federal suits.

state of Florida.  In contrast, the district court noted that, under federal law, it was required to focus on the connections between the Bestors' suit and the whole United States.  For this reason, the court rejected Costa's contention that the Bestors were collaterally estopped from bringing a personal injury suit under the auspices of federal diversity jurisdiction.

The district court then proceeded to address whether the Bestors' federal suit should be dismissed under the federal *forum non conveniens* doctrine, employing the analysis we outlined in La Seguridad.[6]  The court first considered whether an adequate alternative forum existed outside the United States where the Bestors could bring suit.  Costa argued that Italy provided such a forum.[7]  The district court concluded, however, that even though Costa had agreed to waive the applicable

---

[6]In La Seguridad we noted that district courts should employ the following methodology in *forum non conveniens* cases:

> As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case.  Next, the trial judge must consider all relevant factors of *private* interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice.  If the trial judge finds this balance of private interests to be in equipoise or near equipoise, he must then determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum.  If he decides that the balance favors such a foreign forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.

La Seguridad, 707 F.2d at 1307 (quoting, with emphasis added,  Pain v. United Technologies Corp., 637 F.2d 775, 784-85 (D.C. Cir. 1980)).

[7]It is interesting to note that Costa has never argued that Vietnam, the actual site where the accident occurred, is the proper forum for the lawsuits brought by the Appellants.

10

statute of limitations, it was unclear under Italian law whether a defendant could effectuate such a waiver.

Having decided that it was unclear whether Italy could serve as an alternative forum for the Bestors' lawsuit, the district court weighed the private and public interests at stake. The court began by deciding that any witnesses located in Italy or Europe could easily be made accessible to the parties in the United States. According to the district court, Costa — a company involved in the international travel industry — would be able, if necessary, to secure its foreign employees' cooperation in traveling to the United States to provide testimony. Even if Costa had difficulty in this regard, the court noted that the employees' testimony could be obtained through admissions or depositions. Furthermore, the district court pointed out that the Costa employee who arranged for the Vietnam guided van tour resides in Florida.

The district court also considered several other factors that militated in favor of keeping the Bestors' lawsuit in the United States. The court pointed out that the Bestors are United States citizens, that several potential eyewitnesses to the vehicle accident reside in the United States, that the physicians who treated the Bestors reside in the United States, and that Costa transacts a significant amount of business in the United States. After taking into account these factors, the district

11

court concluded that the balance weighed in favor of a United States forum, rather than an Italian one. This was the proper result, the court reasoned, given that there is "a strong presumption against disturbing plaintiffs' initial forum choice." La Seguridad, 707 F.2d at 1307.

2. The District Court's Erie Decision

A few months after the district court ruled in favor of the Bestors on the *forum non conveniens* issue, the Cohons and the Esfelds filed separate federal lawsuits against Costa. Chief Judge Davis having retired from the bench, the Bestors' case was transferred and consolidated with the Cohons' and the Esfelds' cases before Judge Shelby Highsmith. As it had done with respect to the Bestors' lawsuit, Costa moved to dismiss the lawsuits filed by the Cohons and the Esfelds. Like in the Bestors' case, Costa alleged, among other things, that the lawsuits should be dismissed on collateral estoppel or *forum non conveniens* grounds.

The district court, pursuant to Chief Judge Davis's reasoning and the law of the case doctrine, rejected Costa's collateral estoppel and *forum non conveniens* arguments. Other bases for dismissal raised by Costa were rejected as well. The court, however, then proceeded to raise a new issue sua sponte, without benefit of briefs or argument from the parties. Specifically, the district court addressed whether, under the Erie doctrine, federal or state law on *forum non conveniens*

12

should apply in diversity cases.  As part of its analysis, the court noted that a vast

majority of the other federal circuit courts of appeal that have addressed the Erie

issue have concluded that federal law on *forum non conveniens* should apply in the

diversity context.[8]   The district court noted, furthermore, that in the diversity case

of Sibaja v. Dow Chemical Co., 757 F.2d 1215 (11th Cir. 1985), we specifically

held that federal law on *forum non conveniens* was applicable.  Nevertheless, the

court distinguished the existing case law and concluded that state law should apply

in the present litigation.

Concluding that state law should apply, the district court consequently found

that Chief Judge Davis had erred by not applying Florida law on *forum non

conveniens*.  The court then turned to the two prior decisions by Florida's Third

District dismissing the Appellants' cases.  Based on these decisions, the district

---

[8]See Monegro v. Rosa, 211 F.3d 509, 511-12 (9th Cir. 2000), cert. denied, 531 U.S.1112 (2001); Rivendell Forest Prods., Ltd. v. Canadian Pac. Ltd., 2 F.3d 990, 992 (10th Cir. 1993); Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45, 50 (1st Cir. 1990); In re Air Crash Disaster near New Orleans, 821 F.2d 1147, 1154-59 (5th Cir. 1987) (en banc), vacated on other grounds, 490 U.S. 1032, 109 S. Ct. 1928, and reinstated in part, 883 F.2d 17 (5th Cir. 1989) (en banc).  But see Weiss v. Routh, 149 F.2d 193, 195 (2d Cir. 1945) (holding that state law should control).  We note, however, that it seems unlikely that Weiss is still good law in the Second Circuit.  See Schertenleib v. Traum, 589 F.2d 1156, 1162 n.13 (2d Cir. 1978) (treating the question of whether federal or state *forum non conveniens* law should apply in diversity context as unsettled); Gilbert v. Gulf Oil Corp., 153 F.2d 883, 885 (2d Cir. 1946) (applying federal forum non conveniens law in a diversity case), rev'd on other grounds, 330 U.S. 501, 67 S. Ct. 830 (1947); see also Rivendell, 2 F.3d at 992 n.3 (suggesting that Weiss has been implicitly overruled).

13

court held that it was clear that the Appellants' suits should be dismissed under Florida *forum non conveniens* law. Accordingly, the court dismissed the Appellants' suits "without prejudice to their refiling in an appropriate forum (i.e., the courts of Italy, Vietnam, or Plaintiffs respective home states)." R2-52-20. It is this dismissal that the Appellants now challenge.

## II. DISCUSSION

A. The Multi-Step Analysis under the *Erie* Doctrine

Against this procedural backdrop, we now address the issue of whether, under the Erie doctrine, state or federal law on *forum non conveniens* should apply in federal diversity cases.[9] The question of which jurisdiction's law to apply is a legal one that we review de novo. Shaps v. Provident Life & Accident Ins. Co., 244 F.3d 876, 881 (11th Cir. 2001). Under the doctrine enunciated in Erie and its progeny, "federal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427, 116 S. Ct. 2211, 2219 (1996); see also Rules of Decision Act, 28 U.S.C. § 1652.[10] Yet,

___

[9]The Supreme Court has expressly left unresolved whether state or federal law on *forum non conveniens* should apply in diversity cases. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 n.13, 102 S. Ct. 252, 262 n.13 (1981). However, in the admiralty context, the Court has stated that "the doctrine of *forum non conveniens* is nothing more or less than a supervening venue provision, . . . a matter that goes to process rather than substantive rights." American Dredging Co., 510 U.S. at 453, 114 S. Ct. at 988.

[10]The Act states: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded

14

the distinction between substance and procedure can be far from self-evident, and "ever since *Erie*, the [Supreme] Court has struggled to provide criteria to determine when federal law may be used in diversity cases." Erwin Chemerinsky, <u>Federal Jurisdiction</u> § 5.3 at 314-15 (3d ed. 1999). Because of the difficulties associated with the application of the <u>Erie</u> doctrine, we have adopted a multi-step analysis for determining whether state or federal law should apply to a particular issue raised in a diversity case. <u>See, e.g.</u>, <u>Alexander Proudfoot Co. World Headquarters L.P. v. Thayer</u>, 877 F.2d 912, 917-19 (11th Cir. 1989).

The first step of the analysis is to determine whether state and federal law conflict with respect to the disputed issue before the district court. If no conflict exists, then the analysis need proceed no further, for the court can apply state and federal law harmoniously to the issue at hand. <u>See</u> Chemerinsky, <u>supra</u>, § 5.3 at 515. However, if the applicable state and federal law conflict, the district court must ask whether a congressional statute or Federal Rule of Civil Procedure covers the disputed issue. <u>Hanna v. Plumer</u>, 380 U.S. 460, 469-70, 85 S. Ct. 1136, 1143 (1965). If a federal statute or rule of procedure is on point, the district court is to

---

as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652.

15

apply federal rather than state law.  Id. at 471, 85 S. Ct. at 1144.[11]  If no federal

statute or rule is on point, then the court must determine whether federal judge-

made law, rather than state law, should be applied.  Alexander Proudfoot, 877 F.2d

at 917.

In making this determination respecting federal judge-made law, the district

court should begin its inquiry by deciding whether failure to apply state law to the

disputed issue would lead to different outcomes in state and federal court.

Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S. Ct. 1464, 1470 (1945).  That

is, with respect to the state law standard at issue, the court must ask: "Would

application of the standard have so important an effect upon the fortunes of one or

both of the litigants that failure to apply it would unfairly discriminate against

citizens of the forum State, or be likely to cause a plaintiff to choose the federal

court?"  Gasperini, 518 U.S. at 428, 116 S. Ct. at 2220 (internal punctuation

omitted).[12]  If the answer is "no," then the district court should apply federal judge-

_____

[11]The Hanna Court did note that even if a federal statute or rule covers the issue, the statute or rule should not be applied if it is unconstitutional.  Hanna, 380 U.S. at 471, 85 S. Ct. at 1144.  The Court also stated that a federal procedural rule should not be applied if it violates the Rules Enabling Act, 28 U.S.C. § 2072.  Id.

[12]Framing the question in this way helps ensure that the district court takes into account what Hanna, 380 U.S. at 468, 85 S. Ct. at 1142, termed the "twin aims" of Erie, "discouragement of forum-shopping and avoidance of inequitable administration of the laws."  See Gasperini, 518 U.S. at 428 n.8, 116 S. Ct. at 2220 n.8 (connecting the question of whether state law is outcome determinative to the "twin aims" discussed in Hanna).

16

made law.  If the answer is "yes," meaning that state law is outcome-determinative, the court must apply the state law standard, unless affirmative "countervailing federal interests" are at stake that warrant application of federal law.  Id. at 432, 116 S. Ct. at 2222; Byrd v. Blue Ridge Rural Elec. Coop., 356 U.S. 525, 537, 78 S. Ct. 893, 901 (1958).  These steps, when taken together, constitute the proper analysis that a district court should employ in cases involving Erie issues.  See Chemerinsky, supra, § 5.3 at 315 (summarizing the multi-step Erie analysis).

B.  Application of the *Erie* Doctrine to the Present Case

Mindful of this multi-step Erie analysis, we turn to the instant consolidated diversity actions.  It is clear from the decisions of Florida's Third District in these consolidated cases that Florida and federal *forum non conveniens* law differ in application.  As we have explained, Florida law looks to the contacts between the lawsuit and Florida, while federal law looks to the contacts between the lawsuit and the whole United States.  Florida law, therefore, conflicts with federal law on the *forum non conveniens* issue.  Moreover, there is no congressional statute or Federal Rule of Civil Procedure on point; the *forum non conveniens* doctrine is judge-made law.  The parties, furthermore, do not dispute that Florida law is outcome-determinative in this context.  It follows, then, that the primary question in these consolidated cases is whether there is a federal countervailing interest at

17

stake that trumps the application of Florida law on *forum non conveniens* in diversity cases.

1. The Sibaja Decision

We need not address this question *sui generis*, however, because our precedent of Sibaja v. Dow Chemical Co. is directly on point. In that case, the plaintiffs were Costa Rican agricultural workers who had brought a personal injury suit in Florida state court after allegedly being exposed, while in Costa Rica, to pesticides that the defendants manufactured. The defendants removed the case to federal court, arguing that federal *forum non conveniens* law should apply in diversity cases and that the plaintiffs' suit thus should be dismissed.[13] We agreed with the defendants and concluded that federal *forum non conveniens* law was applicable to the diversity suit.

In reaching this conclusion, we called attention to the fact "that the application of the federal, rather than the state, *forum non conveniens* rule alters the outcome of this case." Sibaja, 757 F.2d at 1219. Even though the application of state law would be outcome-determinative, we decided that countervailing federal

---

[13]At the time Sibaja was decided, the Florida *forum non conveniens* doctrine precluded the dismissal of an action under the doctrine when one of the parties was a resident of the state. See Caldwell, 359 So. 2d at 861. Florida law subsequently was revised to allow for dismissal under the doctrine even when one of the parties involved is a state resident. See Kinney Sys., 674 So. 2d at 93.

18

interests trumped this concern. Specifically, we linked the federal *forum non conveniens* doctrine to "the court's inherent power, under article III of the Constitution, to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice and oppression." Id. at 1218; see also Hanna, 380 U.S. at 472-73, 85 S. Ct. at 1145 (noting that "matters which relate to the administration of legal proceedings [are matters over] which federal courts have traditionally exercised strong inherent power, completely aside from the powers Congress expressly conferred in the [Federal Rules of Procedure]") We opined that the federal doctrine is but "one manifestation" of a "court's inherent power to protect the integrity of its process," and we also connected the doctrine to a "[c]ourt's interest in controlling its crowded docket." Sibaja, 757 F.2d at 1218. Essentially, our court in Sibaja indicated that the federal judiciary has a unique supervisory interest in the management and administration of a uniform, national system of Article III courts, and we held that this interest trumps state law. Put differently, the case made clear that the federal judiciary traditionally has exercised a certain level of discretionary power to oversee access to its courts, and that this interest in federal oversight tilts the balance against applying state law.

The Sibaja opinion, in fact, did more than point out the federal

19

countervailing interests that override the need for applying state law. Our court also made a foray into the murky waters of the substance/procedure dichotomy. Because the federal *forum non conveniens* doctrine concerns control over which parties are entitled to have federal courthouse access in the first instance, we stated that the doctrine involves "a decision that occur[s] before, and completely apart from, any application of state substantive law." Id. at 1219. We explained that the federal doctrine is a matter of procedure ("a rule of venue, not a rule of decision"), and that it does not involve "a decision going to the character and result of the controversy." Id. For these reasons, we decided that it was appropriate for the district court to apply federal *forum non conveniens* law and to dismiss the diversity suit of the Costa Rican plaintiffs.

In light of Sibaja, the district court in the present litigation erred by applying Florida law rather than federal law on *forum non conveniens*. We discern no principled distinction between Sibaja and the situation here. The initial order issued in the Bestors' federal lawsuit — in which Chief Judge Davis employed the federal *forum non conveniens* doctrine and concluded that the case should not be dismissed — was the proper mode of analysis that should have been followed by the district court once the Appellants' cases were transferred and consolidated. Instead, the district court chose to sua sponte raise the Erie issue and to apply

20

Florida *forum non conveniens* law, a decision inconsistent with the teachings of Sibaja.

2. The District Court's Rejection of Sibaja

As part of its sua sponte analysis under Erie, the district court addressed Sibaja and attempted to distinguish it from the present consolidated cases. In its order, the district court asserted that our court in Sibaja took great effort to limit the decision to the specific circumstances of that case. The district court focused on two passages in Sibaja, one stating that "under the circumstances presented here, [the district court's decision] whether to exercise its jurisdiction and decide the case was not a decision going to the character and result of the controversy." Sibaja, 757 F.2d at 1219. The other passage referenced by the district court states: "[T]he district court's application of the doctrine of *forum non conveniens* in this case did not operate as a state substantive rule of law and thus transgress *Erie*'s constitutional prohibition." Id. Based on the phrases "under the circumstances presented here" and "in this case," the district court concluded that Sibaja left room for future cases involving the Erie doctrine and *forum non conveniens* to be decided differently.

Upon reaching this conclusion, the district court then proceeded to distinguish Sibaja from the present litigation. The court noted that in Sibaja, the

21

state *forum non conveniens* standard at issue was less restrictive of the court's docket than the federal standard.[14]  Hence, the district court maintained, the federal interest at stake in <u>Sibaja</u> was a federal court's inherent power to police and control its own docket against a floodgate of foreign lawsuits.  This federal interest is not relevant to the present litigation, the court asserted, since the current Florida *forum non conveniens* standard is more restrictive of the court's docket than the federal standard, given that it does not consider the contacts a lawsuit might have with states other than Florida.  Without this interest in restricting the federal docket at stake, the district court concluded that there was no countervailing federal interest that trumped the application of the outcome-determinative Florida *forum non conveniens* standard:

> When the state standard is more restrictive than the federal standard, rather than more liberal, the danger of the district court becoming a de facto open forum, under the guise of diversity jurisdiction, dissipates.  Thus, under the unique circumstances presented here, there is no compelling federal interest of self-regulation, which would warrant application of the federal standard over the state standard.

R2-52-17.

The district court decided that this narrow reading of <u>Sibaja</u> effectuates the

---

[14]<u>See</u> <u>supra</u> note 13.

dual aims of Erie, the prevention of forum shopping and of the inequitable administration of the laws. See Hanna, 380 U.S. at 468, 85 S. Ct. at 1142 (delineating the aims of the Erie doctrine). The court explained that its restricted reading of Sibaja discourages widespread forum shopping by plaintiffs, who would have an incentive to forum shop if contrary *forum non conveniens* standards applied in state courts and in federal courts sitting in the same state. Contrary standards also would discriminate between plaintiffs who can invoke diversity jurisdiction and those who cannot. The district court consequently rejected Sibaja as controlling precedent and dismissed the Appellants' lawsuits.

3.  Errors in the District Court's Analysis

The district court's narrow reading of Sibaja is unpersuasive. As an initial matter, we reject the court's contention that the phrases "under the circumstances presented here" and "in this case" were meant to circumscribe the opinion's ambit. As discussed, Sibaja places the *forum non conveniens* doctrine within the larger context of the federal judiciary's "inherent power . . . to control the administration of the litigation before it" and to oversee access to its courts. Sibaja, 757 F.2d 1218. That is, *forum non conveniens* is a particular species contained within the larger genus of inherent powers held by the federal courts to supervise the administration and management of their proceedings. Read against this backdrop,

23

the word "circumstances" in the phrase "under the circumstances presented here" refers to *forum non conveniens*. That is, the <u>Sibaja</u> court meant that *forum non conveniens* was the particular circumstance of the federal judiciary's inherent power to administer and manage its proceedings that was at issue in that case. The phraseology in no way implies that in one instance federal courts should apply the federal *forum non conveniens* standard, in the other a particular state standard, based on the particular results that will obtain.

Additionally, we read the phrase "in this case" as words of description, not words of limitation. Put differently, the phrase is descriptive, not normative. It serves to contextualize the opinion, but it in no way signals that district courts ought to revisit, on a case-by-case basis, the question of whether state or federal law on *forum non conveniens* should apply in diversity cases, especially in light of the strong countervailing federal interests identified by the <u>Sibaja</u> opinion.

Aside from our concerns over how the district court parsed the text of <u>Sibaja</u>, we take issue with the district court's crabbed reading of the federal interests at stake in the *forum non conveniens* context. Indeed, the district court circumscribed the federal interests involved, stating in effect that there is only one federal interest at stake that need be considered. The court found that the sole interest of a federal court in this area is its interest in restricting access to the

24

federal court docket to prevent a floodgate of foreign suits best filed elsewhere.

We reject this reductionist model.  While the *result* of the *forum non conveniens* doctrine may be to restrict access to the federal docket, this result is reached only after a complex inquiry that takes into account several competing public and private interests at stake, including the private interest of the plaintiff in having access to a federal forum.  See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 843 (1947) (noting that the *forum non conveniens* analysis should include inquiry into "the private interest of the litigant").  The district court's constricted account of the doctrine erases this multifaceted inquiry and reduces the issue to one of mere docket policing.  Several cases buttress the fact that *forum non conveniens* is a multi-sided doctrine in which no one interest is dominant or dispositive of the analysis.  See Piper Aircraft, 454 U.S. at 249-50, 102 S. Ct. at 263 (noting that "[i]f central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable"); La Seguridad, 707 F.2d at 1307 (stating that "controlling weight cannot be given to any one factor in the balancing process").  In light of such precedent, it is clear that the district court's analysis is flawed because it tries to pigeonhole *forum non conveniens*:  the doctrine takes into account the interest in preventing federal docket congestion, but it cannot be reduced to that.  See Piper Aircraft, 454

25

U.S. at 241 n.6, 102 S. Ct. at 258 n.6 (listing "the administrative difficulties flowing from court congestion" as only *one* of the considerations taken into account under the federal *forum non conveniens* doctrine).

We point out, furthermore, that there are several affirmative federal interests undergirding the federal *forum non conveniens* doctrine that cannot be explained away as concern over restricting access to the federal courts. Even if we ignore the countervailing federal interest in restricting access to the federal docket, the federal interests that we are about to discuss are sufficient, standing alone, to trump outcome-determinative state law on *forum non conveniens*.

We first point out the federal interest in ensuring that, as a general rule, United States citizens have access to the courts of this country for resolution of their disputes. There is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction. This interest is taken into account by the federal *forum non conveniens* standard. See Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524, 67 S. Ct. 828, 831-32 (1947) (stating that "there is good reason why . . . [a case] should be tried in the plaintiff's home forum if that has been his choice" and that "a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh

26

the inconvenience the defendant may have shown"); Gilbert, 330 U.S. at 508, 67 S. Ct. at 843 (noting that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed").[15] This federal interest is reflected in La Seguridad, where we noted that there is "a strong presumption against disturbing plaintiffs' initial forum choice." La Seguridad, 707 F.2d at 1307. It also motivated our statement in that case that before a plaintiff's forum choice can be unsettled, the district court must evaluate and determine that "an adequate alternative forum exists which possesses jurisdiction over the whole case." Id.

The district court's position is inconsistent with the federal interest we have delineated. As noted, the district court's position is that courts are only to consider the federal interest in restricting access to the docket in deciding whether to apply state or federal *forum non conveniens* law. If that position were adopted, it would mean that the federal standard only applies when it is more likely than the state standard to lead to dismissal of the plaintiff's diversity suit. Conversely, the state standard only would apply when it is more likely than the federal standard to lead to dismissal. In addition to the patent unfairness of such a scheme, the district

---

[15]We note that the bias towards the plaintiff's choice of forum is much less pronounced when the plaintiff is not an American resident or citizen. See Piper Aircraft, 454 U.S. at 255–56, 102 S. Ct. at 265-66.

court's approach would defeat the federal judiciary's interest in making sure that American plaintiffs normally have access to a forum in this country to resolve their disputes. We refuse to countenance such a result.

We now turn to another important federal interest at stake in the *forum non conveniens* context, the federal government's interest in foreign relations. The unique interest of the federal government in the area of foreign relations has been reiterated time and again by the Supreme Court.[16] It is clear, moreover, that foreign relations are implicated in the *forum non conveniens* calculus. See Rivendell, 2 F.3d at 992 (noting the "important federal interest[]" involved as a result of "the foreign policy implications of *forum non conveniens* decisions"); Exxon Corp. v. Chick Kam Choo, 817 F.2d 307, 320 (5th Cir. 1987), rev'd on other grounds, 486 U.S. 140 (1988) (referring to "the transnational and international nature of the interests at stake in a *forum non conveniens* inquiry").

Several examples demonstrate how foreign relations come into play in the *forum non conveniens* context. For instance, in deciding whether a case should be

---

[16]See, e.g. Atherton v. FDIC, 519 U.S. 213, 226, 117 S. Ct. 666, 674 (1997) (stating that federal common law controls the United States' "relationships with other countries"); Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 424-27, 84 S. Ct. 923, 938-40 (1964) (holding that states are not free to develop their own "act of state" doctrine because federal law controls); United States v. Pink, 315 U.S. 203, 233, 62 S. Ct. 552, 567 (1942) (noting that "[p]ower over external affairs is not shared by the States; it is vested in the national government exclusively"); United States v. Belmont, 301 U.S. 324, 331, 57 S. Ct. 758, 761 (1937) ("[I]n respect of our foreign affairs generally, state lines disappear.").

28

dismissed because a foreign jurisdiction is more suitable, federal courts necessarily must analyze the interest that the foreign country has in the dispute, an analysis that may raise issues of international comity. Federal courts also must consider whether the foreign jurisdiction provides an adequate alternative forum for the plaintiff, which may require a court to consider whether the law of the foreign country provides more than a "remedy . . . [that] is so clearly inadequate or unsatisfactory that it is no remedy at all." Piper Aircraft, 454 U.S. at 254, 102 S. Ct. at 265. In some cases, moreover, federal courts may have to address arguments presented by a foreign sovereign that has intervened or filed an amicus brief. In such cases, the sovereign may allege that the case will impair its national economic or policy interests if the case is allowed to proceed in the United States. These are but a few of the ways in which issues of foreign relations arise in the *forum non conveniens* area. The presence of such issues militates in favor of a federal standard for the doctrine in diversity cases. See Rivendell, 2 F.3d at 992 (adopting federal standard in part because of the foreign affairs implications of *forum non conveniens*). Given the dominant federal role in the foreign relations arena, the federal judiciary needs to have the flexibility to fashion its own *forum non conveniens* doctrine that takes full account of the foreign policy concerns at stake, irrespective of whether a given case comes before the court on federal question or

29

diversity grounds.

We also draw attention to a third federal interest that is at stake— protection of a national, unified set of venue rules within the federal judicial system. See In re Air Crash, 821 F.2d at 1158 (adopting federal standard on *forum non conveniens* for diversity cases in part to protect the "internal consistency and administration" of the federal system). This unified set of venue rules is reflected most clearly in 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Application of a state standard on *forum non conveniens* that is different from the federal standard, however, leads to an analysis that is analytically inconsistent with § 1404(a).

The analytical inconsistency can be demonstrated by focusing on the Florida *forum non conveniens* standard, which only considers the contacts that a lawsuit has with the State of Florida. The Florida standard, if applied in federal court, would require the district court to ignore the contacts the suit might have with other states in the determination of whether dismissal is appropriate. In contrast, a thorough analysis under § 1404(a) necessarily requires that the district court consider the contacts that a lawsuit has with any of the fifty states to determine if

the case should be transferred there. In other words, a seamless system of national venue rules requires federal courts to look to the connections a lawsuit has with the entire United States. Application of a state standard like Florida's, therefore, would require an analysis by the district court that is incongruent with the analysis required under § 1404(a).[17] See Parsons v. Chesapeake & Ohio Ry. Co., 375 U.S. 71, 73-74, 84 S. Ct. 185, 187 (1963) (noting that "different factual considerations may be involved" in a state court's dismissal on *forum non conveniens* grounds and a federal court's transfer of a suit under § 1404(a)). It follows that to preserve the federal interest in having an internally consistent, national set of venue rules, the federal *forum non conveniens* standard should be applied in diversity cases.

Irrespective of the federal judiciary's interest in protecting the court docket from a flood of foreign suits, the three countervailing federal interests we have enunciated justify the application of federal, rather than state, law in the *forum non conveniens* context. The district court, however, did provide one additional reason for why Florida law ought to apply that we have not yet confronted. In its order,

---

[17]Indeed, Florida's Third District referenced § 1404 as a justification for why application of Florida's *forum non conveniens* doctrine — in contrast to its federal counterpart — should not entail consideration of the contacts between the lawsuit and states other than Florida. The Third District held that Florida state courts should not consider such contacts because the Florida judicial system is not like the federal system: "The federal courts are a unitary system having nationwide jurisdiction. If there is another more convenient forum in the United States, then the remedy is to transfer the cause under 28 U.S.C. § 1404, rather than dismiss for forum non conveniens." Cohon, 728 So. 2d at 1228 n.*.

31

the district court alleged that its constricted reading of <u>Sibaja</u> was appropriate because it fulfilled the dual aims of <u>Erie</u>, the prevention of forum shopping and of the inequitable administration of the laws. <u>See</u> <u>Hanna</u>, 380 U.S. at 468, 85 S. Ct. at 1142 (noting the aims of <u>Erie</u>).

The dual aims of <u>Erie</u> cannot save the district court's position. We note, as an initial matter, that these dual aims already are incorporated into the step of the <u>Erie</u> analysis that addresses whether application of state law would affect the outcome of the suit.[18] The Supreme Court in <u>Gasperini</u> indicated that the dual aims of <u>Erie</u> were addressed through this inquiry into whether state law is outcome determinative. <u>See</u> <u>id.</u> at 428 n.8, 116 S. Ct. at 2220 n.8. Yet, as we have explained, even if state law is outcome determinative, federal law still may control if there is a countervailing federal interest at stake. <u>Id.</u> at 432, 116 S. Ct. at 2222; <u>Byrd</u>, 356 U.S. at 537, 78 S. Ct. at 901. Hence, because <u>Sibaja</u> and our own analysis in this case show that strong federal interests trump state law in the *forum non conveniens* context, there is no reason to revive the question of whether the dual aims of <u>Erie</u> have been satisfied.

---

[18]As noted, in addressing whether state law is outcome determinative, the district court must inquire: "Would application of the standard have so important an effect upon the fortunes of one or both of the litigants that failure to apply it would unfairly discriminate against citizens of the forum State, or be likely to cause a plaintiff to choose the federal court?" <u>Gasperini</u>, 518 U.S. at 428, 116 S. Ct. at 2220.

Nevertheless, we do point out that the district court's position does not in itself prevent forum shopping and the inequitable administration of justice. Rather, the court's opinion merely replaces one form of forum shopping with another and generates its own type of inequitable administration. The district court's holding still would encourage plaintiffs to forum shop, just not between state courts and federal courts sitting in the same state. Plaintiffs instead would be encouraged to forum shop between district courts in different states, since different *forum non conveniens* standards would apply to federal districts based on the particular state within which a district was located. Furthermore, the district court's disposition creates its own inequities. By concluding that state law on *forum non conveniens* only applies in diversity cases when it is more restrictive than federal law, the district court created a rule whereby federal courts are always to apply the standard that is most hostile to the plaintiff's forum choice. Such an outcome is particularly inappropriate in light of the "strong presumption against disturbing plaintiffs' initial forum choice." La Seguridad, 707 F.2d at 1307. In sum, then, we conclude the district court's recourse to the dual aims of Erie does not alter our decision that the court misconstrued Sibaja and erred by applying state *forum non conveniens* law.

## III. CONCLUSION

These consolidated cases involved the appeal of a judgment of dismissal in which the district court held that under the <u>Erie</u> doctrine, the state standard on *foreign non conveniens* applies in diversity cases whenever the state standard is more restrictive, and thus permits more dismissals, than its federal counterpart. In this appeal, however, we have decided that federal law on *forum non conveniens* instead should apply. We have reached this decision after concluding that the <u>Sibaja</u> case controls the issue at hand. Furthermore, we have reached this decision based on our analysis showing that several federal interests, other than restricting access to the federal docket, are at stake in the *forum non conveniens* context. Such interests include the federal goal of ensuring that United States citizens generally have access to the courts of this country for resolution of their disputes; the federal government's interest in foreign relations; and the federal concern over maintaining a national, unified set of venue rules among the several circuits. These federal interests trump outcome-determinative state law on *forum non conveniens*. Our analysis thus had led us to the conclusion that the district court erred in applying Florida law on *forum non conveniens* to this diversity suit, and so we REVERSE the judgment of dismissal and REMAND for further proceedings consistent with this opinion.