Anne WHEATLEY, Plaintiff,

v.

MOE'S SOUTHWEST GRILL, LLC; Mama Fu's Noodle House, Inc.; Raving Brands Holding, Inc.; H. Martin Sprock, III; and Jane Doe and John Doe, Defendants.

Civil Action No. 1:05–cv–2174–TCB.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 30, 2008.

Guy H. Weiss, Jonathan Riley Granade, Robert Edward Casey, Jr., Casey Gilson Leibel, Atlanta, GA, for Plaintiff.

David Roland Hughes, Davis, Pickren, & Seydel, Atlanta, GA, for Defendants.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

### I. Background

Atlanta-based Defendant Raving Brands Holding, Inc. is a national franchisor of food and beverage concepts. Its concepts include Defendant Moe's Southwest Grill, LLC and Defendant Mama Fu's Noodle House, Inc. Defendant Martin Sprock founded Raving Brands, Moe's, and Mama Fu's.

In July 2003, Plaintiff Anne Wheatley became a part-time, hourly employee of Moe's and Mama Fu's, serving as an administrative assistant to a company vice president. After a series of promotions, on March 23, 2004, Sprock and Rick Akam, who at that time was Raving Brands' chief operating officer, informed Plaintiff that she had become a partner in Raving Brands. They also told her that as a part of the compensation package for being made partner, she was to receive 50,000 shares in both Moe's and Mama Fu's. She in fact received financial distributions consistent with stock ownership.

At the end of April 2005, Plaintiff resigned from Moe's and Mama Fu's. The next month, she wrote a letter to Defendants requesting that the stock certificates for her shares be given to her. She never received a response from Defendants, nor did she receive the certificates or any further distribution payments.

On August 22, 2005, Plaintiff filed this suit against Defendants. Her complaint set forth claims for conversion[1]; conversion: piercing the corporate veil; breach of fiduciary duty; violations of Georgia's civil RICO statute; constructive trust; money had and received; quantum meruit; a declaratory judgment that she is the owner of 50,000 unrestricted shares of Moe's and Mama Fu's; expenses of litigation; and punitive damages.

Defendants denied liability and filed a counterclaim setting forth claims against Plaintiff for breach of contract, intentional interference with business opportunities and prospective advantage, violations of the Georgia Trade Secrets Act, and a declaratory judgment that Plaintiff does not own unrestricted shares in Moe's and Mama Fu's.

Issue having been joined, the case boiled down to whether, as Plaintiff contended, Defendants had orally promised her that her stock in Moe's and Mama Fu's was unrestricted, meaning that she would still own it and could take it with her upon her termination from Defendants' employ. Defendants denied having ever made any such promise and insisted that Plaintiff's shares were restricted.

On January 10, 2007, Defendants made an offer of settlement to Plaintiff pursuant to O.C.G.A. § 9–11–68. The offer stated that Defendants would pay Plaintiff $35,000 on the condition that she dismiss the case and release Defendants from liability on all claims. Plaintiff never responded to Defendants' offer. Therefore, pursuant to O.C.G.A § 9–11–68(c), as of February 9, 2007 (thirty days from the date of offer) Defendants' offer was deemed rejected.

On August 27, 2007, the Court granted Defendants' motion for summary judgment on the claims in Plaintiff's complaint, essentially finding that as a matter of law Plaintiff could not prove that she and Defendants had an enforceable agreement that her 50,000 shares in Moe's and Mama Fu's were unrestricted.

On September 10, 2007, Defendants filed a motion, pursuant to O.C.G.A. § 9–11–68, for an award of attorney's fees and expenses of litigation [143]. Defendants requested attorney's fees of $96,711.00 and expenses of litigation of $306.25, which were incurred between February 9 and August 27, 2007.

On September 18, 2007, Plaintiff appealed the August 27, 2007 order to the Eleventh Circuit. Defendants cross-appealed the portion of the order that struck their counterclaim as a sanction for their abusive discovery practices. This Court reserved ruling on Defendants' motion until a final disposition was reached by the Eleventh Circuit.

On July 18, 2008, the Eleventh Circuit affirmed. *Wheatley v. Moe's Southwest Grill, LLC,* 285 Fed.Appx. 660 (11th Cir. 2008). A certified copy of the Eleventh Circuit's opinion was filed in this Court on September 12, 2008.

Plaintiff opposes Defendants' motion on two grounds. First, she contends that O.C.G.A. § 9–11–68 does not apply in this case. Second, she contends that the statute violates the Georgia Constitution.

## II. Discussion

### A. Defendants' Renewed Motion for Attorney's Fees

Prior to ruling on Defendants' original motion for attorney's fees, the Court will

---

1. Plaintiff later amended her complaint to change her claim for conversion to a claim for "quasi-conversion."

address Defendants' renewed motion for attorney's fees, which Defendants filed on September 26, 2008[166].

In their renewed motion, Defendants reassert their claim for attorney's fees and expenses incurred between February 9 and August 27, 2007, plus a new claim for attorney's fees and expenses of approximately $49,000 incurred while the case was on appeal to the Eleventh Circuit. Plaintiff has not yet filed a response to this motion, as the ten-day period for her to do so has not yet expired. LR 7.1(B), NDGa.

 The portion of Defendants' renewed motion that seeks attorney's fees and expenses of litigation incurred on appeal is meritless. The statute expressly limits awards of fees and expenses to those incurred "from the date of the rejection of the offer of settlement through the entry of judgment...." O.C.G.A. § 9–11–68(b)(1). Accordingly, the Court will deny Defendants' renewed motion.[2] The Court will now turn to Defendants' original motion for attorney's fees, which seeks $97,017.25 incurred between February 9 and August 27, 2007.

## B. Applicability of O.C.G.A. § 9–11–68 to This Action

### 1. Characterization of This Case as a "Tort" Action

Plaintiff first contends that O.C.G.A § 9–11–68 is applicable only in tort actions and that this is not a tort action. Defendants disagree, insisting that the statute is applicable because this is a tort action.

Plaintiff and Defendants characterize the individual counts of Plaintiff's complaint as indicated in the chart below.

| Count | Plaintiff's Characterization | Defendants' Characterization |
|---|---|---|
| Quasi-conversion | Tort | Tort |
| Conversion: piercing the corporate veil | Tort | Tort |
| Breach of fiduciary duty | Tort | Tort |
| Georgia's civil RICO statute | Hybrid criminal-civil statute | Tort—based on the tort of conversion |
| Constructive trust | Contract | Equity—based on fraud, which is a tort |

**2.** The statute's express limitation on awards of attorney's fees through (but not beyond) the entry of judgment is consistent with the Georgia Supreme Court's interpretations of other fee-shifting statutes that are available in civil actions generally. *See, e.g., McGahee v. Rogers,* 280 Ga. 750, 632 S.E.2d 657 (2006) (holding that O.C.G.A. § 9–15–14, involving frivolous litigation, does not authorize the recovery of attorney's fees and expenses of litigation incurred on appeal); *David G. Brown P.E., Inc. v. Kent,* 274 Ga. 849, 851, 561 S.E.2d 89, 91 (2002) (holding that O.C.G.A. § 13–6–11, which authorizes awards of attorney's fees against a defendant who acts in bad faith, is stubbornly litigious, or causes the plaintiff unnecessary trouble and expense "does not permit an award of attorney fees and litigation expenses for proceedings before the appellate courts."). On the other hand, the supreme court has allowed the recovery of attorney's fees incurred on appeal pursuant to fee-shifting statutes covering specific substantive areas of law. *See, e.g., Staten v. Staten,* 242 Ga. 399, 249 S.E.2d 81 (1978) (holding that O.C.G.A. § 19–6–2, involving divorce actions, authorizes recovery of attorney's fees and expenses of litigation incurred on appeal); *Am. Ass'n of Cab Cos. v. Olukoya,* 233 Ga.App. 731, 505 S.E.2d 761 (1998) (holding that O.C.G.A. § 33–4–6, which authorizes an award of attorney's fees against an insurer who refuses in bad faith to pay a covered claim, allows recovery of attorney's fees and expenses of litigation incurred on appeal).

| Money had and received | Quasi-contractual | Equity |
|---|---|---|
| Quantum meruit | Contract | Equity |
| Declaratory judgment | [No characterization] | Based on above torts |
| Expenses of litigation | [No characterization] | Based on above torts |
| Punitive damages | [No characterization] | Based on above torts |

According to Plaintiff, because this case involves both tort and non-tort claims, "the instant case is not a tort action" and O.C.G.A. § 9–11–68 does not apply. Defendants, who, as the chart above reflects, characterize almost all of Plaintiff's claims as being tort claims, counter that "Plaintiff's action was in tort and O.C.G.A. § 9–11–68 applies."

The statute, however, does not expressly limit its application to tort *actions*. Instead, it authorizes either party to serve upon the other party an offer to "settle a tort *claim* ..." O.C.G.A. § 9–11–68(a) (emphasis added).

There are no Georgia or federal cases addressing Plaintiff's argument. It appears to this Court that because the statute refers to offers to settle tort claims rather than tort actions, there is no need to determine the proper characterization of a pleading asserting multiple causes of action. The statute authorizes either party to offer to settle any tort claims asserted in the case. However, as discussed below, because this Court intends to certify to the Supreme Court of Georgia a question regarding the statute's constitutionality, the Court will include in that certification a question relating to this issue.

### 2. Applicability of O.C.G.A. § 9–11–68 in Federal Court

Plaintiff also argues that the statute is inapplicable to this case pursuant to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny. She contends that Fed.R.Civ.P. 68 ("Rule 68"), which authorizes a party defending a claim to collect costs incurred after an offer of judgment is rejected by the opposing party, preempts O.C.G.A. § 9–11–68. The Court disagrees.

Under the *Erie* doctrine, when a federal court adjudicates state law claims in a diversity of citizenship action, the court is obligated to apply the state substantive law and federal procedural law. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). Due in part to the confusing nature of this substance/procedure dichotomy, the Eleventh Circuit has adopted a multi-part analysis for determining whether state or federal law should be applied to a particular issue raised in diversity cases. *See, e.g., Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 917–19 (11th Cir.1989).

The first step is for the court to determine whether state and federal law conflict with respect to the disputed issue. *Esfeld v. Costa Crociere, S.PA.*, 289 F.3d 1300, 1306 (11th Cir.2002). "If no conflict exists, then the analysis need proceed no further, for the court can apply state and federal law harmoniously to the issue at hand." *Id.* at 1306–07. If, however, the relevant state and federal laws conflict, the court must ask whether a congressional statute or Federal Rule of Civil Procedure addresses the disputed issue. *Hanna v. Plumer*, 380 U.S. 460, 469–70, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). If a federal statute or rule does directly cover the disputed issue, the court is to apply federal law. *Id.* at 471, 85 S.Ct. 1136. "If no federal statute or rule is on point, then the court must determine whether federal judge-made law, rather than state law, should be applied." *Esfeld*, 289 F.3d at 1307.

In evaluating whether federal judge-made law or state law should be applied, the district court should begin by determining whether a decision not to apply state law to the disputed issue would lead to different outcomes in state and federal court. *Id.* In other words, "[w]ould application of the standard have so important an effect upon the fortunes of one or both of the litigants that failure to apply it would unfairly discriminate against citizens of the forum State, or be likely to cause a plaintiff to choose the federal court?" *Gasperini*, 518 U.S. at 428, 116 S.Ct. 2211. If the answer is "no," then the court should apply federal judge-made law. *Esfeld*, 289 F.3d at 1307. Conversely, if the answer is "yes," indicating that state law is outcome-determinative, the court must apply the state law, unless significant "countervailing federal interests" are at stake justifying the application or federal law. *Id.*

While the question of whether O.C.G.A. § 9–11–68 is substantive law and whether it is in conflict with Rule 68 is a matter of first impression, the Eleventh Circuit and other courts have addressed the applicability in federal court of similar state-enacted offer-of-settlement and fee-shifting statutes.

For instance, in *Tanker Management, Inc. v. Brunson*, 918 F.2d 1524, 1528 (11th Cir.1990), the Eleventh Circuit considered the issue of whether a Florida statute that provided that a prevailing defendant could recover attorney's fees if the plaintiff unreasonably rejected either a settlement offer or an offer of judgment was in conflict with Rule 68. Impliedly determining that the Florida statute was substantive law, the Eleventh Circuit found that Rule 68 did not conflict with the Florida statute:

> Appellant's argument in favor of Rule 68 fails initially because Rule 68 is not in "direct collision" with the portion of

F.S.A. § 45.061 applicable in this case. Rule ˙68 concerns only interest and offers of judgment, while the Florida statute concerns attorney's fees, offers of judgment and settlement offers. Thus, the circumstances here are similar to those in *Walker v. Armco Steel Corp.*, 446 U.S. 740 [ (citations omitted) ] (1980), in which the Court in a diversity action was asked to determine whether the federal court should follow state law or, alternatively, Fed.R.Civ.P. 3 in deciding when an action is commenced for the purpose of tolling the state statute of limitations. In the course of holding that Oklahoma law controlled, the Court stated: " '[T]he scope of the Federal Rule [is] not as broad as the losing party urge[s], and therefore, there being no Federal Rule which cover[s] the point in dispute, *Erie* command[s] the enforcement of state law.' " 446 U.S. 740, 750 [ (citations omitted) ] (1980) (citing *Hanna v. Plumer*, 380 U.S. 460, 472 [ (citations omitted) ] (1965)).

*Tanker Mgmt.*, 918 F.2d at 1528.

Similarly, Rule 68 and O.C.G.A. § 9–11–68 are not in "direct collision" with one another. Rule 68 is available only to a party defending against a claim, whereas O.C.G.A. § 9–11–68 is available to both plaintiffs and defendants. Moreover, Rule 68 allows the recovery of "costs," which ordinarily does not include attorney's fees. O.C.G.A. § 9–11–68, on the other hand, awards the successful offeror his attorney's fees incurred between the date of rejection of the offer and the entry of judgment. Additionally, Rule 68 applies to any claim, whereas O.C.G.A. § 9–11–68 is applicable only to tort claims. Further, Rule 68 authorizes offers of judgment, not offers of settlement, as is the case with O.C.G.A. § 9–11–68. Finally, unlike Rule 68, O.C.G.A. § 9–11–68 expressly allows the offeror to place conditions (as Defendants did here) [3] on the acceptance of the

---

3. Defendants' offer of settlement included, among others, the following conditions: that

offer of settlement. In light of these substantial differences between Rule 68 and O.C.G.A. § 9–11–68, the two cannot be said to be in "direct collision," and there is no reason to believe that O.C.G.A. § 9–11–68 cannot be applied in harmony with Rule 68.

Further, in *Tanker Management* the Eleventh Circuit discussed the leading United States Supreme Court case regarding the parameters set on the award of attorney's fees in federal court actions: *Alyeska Pipeline Service Co. v. Wilderness Soc.*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In *Alyeska*, the Court made a careful distinction between how federal courts should apply their inherent power to award attorney's fees, unless expressly forbidden by Congress, and how federal courts should apply state law regarding attorney's fees. *Id.* at 259, 95 S.Ct. 1612. The Court noted:

> A very different situation is presented when a federal court sits in a diversity case. "[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed."

*Id.* at 259 n. 31, 95 S.Ct. 1612 (citations omitted) (quoting 6 J. Moore, Federal Practice, ¶ 54.77[2], pp. 1712–1713 (3d ed. 1974) (footnotes omitted)). The Supreme Court continued by discussing *People of Sioux County v. Nat'l Surety Co.*, 276 U.S. 238, 243, 48 S.Ct. 239, 72 L.Ed. 547 (1928),

a case prior to *Erie* in which the Court recognized that it would be an anomalous result if a state statute providing for attorney's fees could be thwarted by removal of the case to federal court. *Alyeska*, 421 U.S. at 259 n. 31, 95 S.Ct. 1612. In *Alyeska*, the Supreme Court found no reason a different result should be reached post-*Erie*.

O.C.G.A. § 9–11–68 creates a substantive right to attorney's fees in certain cases where *either* party, having made an offer of settlement (not judgment, unlike Rule 68), ultimately prevails. While the statute may provide certain procedural constraints, the statute is at its core a substantive law. *Accord Pinkerton & Laws, Inc. v. Royal Ins. Co. of Am.*, 227 F.Supp.2d 1348, 1357 (N.D.Ga.2002) (holding that O.C.G.A. § 33–4–6, which authorizes an award of attorney's fees against an insurer who refuses in bad faith to pay a covered claim, was substantive law for purposes of the *Erie* doctrine and thus inapplicable where the parties had agreed that the policy was governed by Florida law); *Elberta Crate & Box Co. v. Cox Automation Systems, LLC*, No. 6:05 CV 03(HL), 2005 WL 1972599, at *5–6 (M.D.Ga. Aug. 16, 2005) (holding that O.C.G.A. § 13–6–11, which authorizes an award of attorney's fees against a defendant who acts in bad faith, is stubbornly litigious, or causes the plaintiff unnecessary trouble and expense, is substantive for purposes of *Erie* ).

Because O.C.G.A. § 9–11–68 is substantive in nature and does not conflict with a federal law or rule of procedure, the Court is bound to apply it to this case.

---

Plaintiff would execute a general release of not only Defendants, but also "their respective agents, employees, subsidiaries, contractors, insurers, representatives, successors and assigns" from any and all claims that could have been asserted in this action; and that

Plaintiff release all claims of ownership as to any interest in the defendant companies and "their respective subsidiaries, successors and/or predecessors in interests, and affiliated companies."

## C. The Constitutionality of O.C.G.A. § 9–11–68

Plaintiff also contends that O.C.G.A. § 9–11–68 violates the Georgia Constitution in two ways. First, she argues that the statute violates her constitutional right of access to the courts. *See* Ga. Const. art. I, § 1, ¶ 12. Second, she contends that because the statute "solely affects tort litigants," it is an unconstitutional special law, contrary to Ga. Const. art. III, § 6, ¶ 4.

O.C.G.A. § 9–11–68 became effective on February 16, 2005. The Georgia Supreme Court has held that retroactive application of the statute violates the Georgia Constitution. *Fowler Props., Inc. v. Dowland,* 282 Ga. 76, 646 S.E.2d 197 (2007).[4] Otherwise, the supreme court, which has exclusive appellate jurisdiction[5] over questions regarding the constitutionality of Georgia statutes, has not yet addressed the constitutionality of O.C.G.A. § 9–11–68.

Because resolution of this case involves questions of Georgia law which are dispositive but unanswered by precedent in the decisions of the Supreme Court of Georgia, this Court defers its decision in this case pending certification of the questions below to the Supreme Court of Georgia pursuant to Ga. Const. art. VI, § 6, ¶ 4; O.C.G.A. § 15–2–9; and Rule 37 of the Supreme Court of Georgia. *See Kitchen v. CSX Transp., Inc.,* 19 F.3d 601 (11th Cir. 1994).

### QUESTIONS TO BE CERTIFIED

1. Does O.C.G.A. § 9–11–68 violate art. I, § 1, ¶ 12 of the Georgia Constitution?

2. Does O.C.G.A. § 9–11–68 violate art. III, § 6, ¶ 4 of the Georgia Constitution?

3. If the answer to both questions 1 and 2 is "no," does O.C.G.A. § 9–11–68 apply to a case such as this, in which the Plaintiff asserts multiple claims, some of which sound in tort and some of which do not?

Nothing in this certification, including the Court's statement of the questions to be certified, is meant to limit the scope of the inquiry by the Supreme Court of Georgia. *See Wood v. N.Y. Life Ins. Co.,* 758 F.2d 1459, 1462 (11th Cir.1985).

The entire record in the case, together with copies of the briefs of the parties, is transmitted herewith.

## III. Conclusion

For the foregoing reasons, the Court DENIES Defendants' renewed motion for attorney's fees and expenses of litigation incurred on appeal [166]. The Court DENIES Defendants' original motion for attorney's fees and expenses of litigation [143] WITHOUT PREJUDICE pending the Supreme Court of Georgia's answers to the questions certified herein. The CLERK is DIRECTED to forward a certified copy of the record to the Supreme Court of Georgia.

---

4. Plaintiff filed this action on August 22, 2005. Therefore, retroactive application is not involved in this case.

5. Ga. Const. art VI, § 6, ¶ 2(1).