TERENCE T. EVANS, Circuit Judge.
Today, for the first time in this court, we encounter the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a (FTAIA), a 1982 amendment to the Sherman Act, which affects its reach in foreign commerce. The primary issue involves whether the relevant provision of FTAIA is jurisdictional or whether it states an additional element of a Sherman Act claim. This in turn affects how a court deals with it and, in this case, what the outcome will be.
Plaintiffs United Phosphorus and Shroffs United Chemicals are chemical manufacturers based in India. J.C. Miller & Associates is an American firm, which was involved in a joint venture with the Indian plaintiffs. The defendants are Angus Chemical and its officers, Angus Che-mie GmbH, and Lupin Laboratories — • American companies or subsidiaries of American companies, which we will refer to collectively as Angus. The complaint alleges that Angus attempted to monopolize, did monopolize, and conspired to monopolize the market for certain chemicals, in violation of § 2 of the Sherman Act.
The issue of the court’s subject matter jurisdiction was first raised soon after the case was filed in 1994. Angus’ Rule 12(b)(1) motion was denied. Then, after considerable discovery (24 depositions and 8,000 pages of exhibits), Angus filed renewed motions to dismiss for lack of subject matter jurisdiction and for summary judgment in 2000. Angus contended that the court lacked subject matter jurisdiction under FTAIA, which, as relevant here, limits application of the Sherman Act *945 to conduct with a “direct, substantial, and reasonably foreseeable effect” on domestic commerce. After a thorough analysis of the facts, Magistrate Judge Ian H. Levin, sitting by consent, agreed with Angus and granted its motion to dismiss. United Phosphorus, Ltd. v. Angus Chem. Co., 131 F.Supp.2d 1003 (N.D.Ill.2001).
Briefly, to the facts. In their original 1994 complaint, the plaintiffs alleged that India had the “greatest incidence of tuberculosis in the world.” That allegation is consistent with a report from the Centers for Disease Control, dated March 22, 2002, which says that every year approximately 2 million people in India develop tuberculosis, accounting for 25 percent of the world’s new cases. The parties tell us that “Ethambutol” is a primary pharmaceutical for the treatment of the disease. The chemicals involved in its production are the subject of this lawsuit.
2-Amino-l Butanol (AB)is the key ingredient of Ethambutol, and 1-Nitro-Pro-pane (1-NP) is the raw material from which AB is made. To make Ethambutol, defendant Lupin uses AB, which it buys from defendant Chemie, currently the world’s only manufacturer of AB. Chemie is a German subsidiary, wholly owned by defendant Angus. The AB is manufactured in Germany. Angus manufactures 1-NP at a plant in Louisiana and is the world’s only manufacturer of 1-NP.
This lawsuit stems from prior trade-secret litigation involving several of the parties. In the early 1990’s, the Indian plaintiffs decided to acquire the technology for making AB and 1-NP. They went to Dr. John Miller (owner of J.C. Miller & Associates), who also had been the vice-president of research and development at Angus and supervised Angus’ efforts to improve its AB processes. When Angus learned what was going on, it sued Miller and the Indian entities (who are the plaintiffs here) in an Illinois state court, seeking to enjoin Miller from misappropriating its trade secrets. Two years later, when Angus was faced with a discovery order which would have required it to disclose the details of the technology, Angus voluntarily dismissed the lawsuit.
The defendants in that case then filed this suit. As plaintiffs here, they claim that but for the Illinois action they would have sold AB for profit. They accuse Angus et al. of using anticompetitive means — - the lawsuit — to thwart their plans.
As we said, the case was dismissed for lack of subject matter jurisdiction under FTAIA, which amends the Sherman Act, stating:
This Act shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—
(1) such conduct has a direct, substantial, and reasonably foreseeable effect—
(A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
(B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
(2) such effect gives rise to a claim under the provisions of this Act other than this section.
If this Act applies to such conduct only because of the operation of paragraph (1)(B), then this Act shall apply to such conduct only for injury to export business in the United States.
What is relevant here is that the conduct must have “a direct, substantial, and rea *946 sonably foreseeable effect” on trade or commerce within the United States, rather than just on foreign commerce.
If the requirement for a substantial effect on commerce in the United States goes to the court’s subject matter jurisdiction, the case is analyzed under Federal Rule of Civil Procedure 12(b)(1), which provides for dismissal of an action for lack of subject matter jurisdiction. Subject matter jurisdiction is, as we know, an issue that should be resolved early but must be considered at any stage of the litigation. If subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true. However, as here, if the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other material to support the motion. The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction. Mortensen v. First Fed. Sav. & Loan Ass’n, 549 F.2d 884 (3d Cir.1977). And the court is free to weigh the evidence to determine whether jurisdiction has been established. Capitol Leasing Co. v. FDIC, 999 F.2d 188 (7th Cir.1993); Filetech S.A. v. France Telecom S.A., 157 F.3d 922 (2d Cir.1998); Carpet Group Int’l v. Oriental Rug Importers Ass’n, 227 F.3d 62 (3rd Cir.2000). Factual findings rendered during this process are reviewed for clear error. Rexford Rand Corp. v. Ancel, 58 F.3d 1215 (7th Cir.1995); Kruman v. Christie’s Int’l PLC, 284 F.3d 384 (2d Cir.2002).
On the other hand, if the requirement for a substantial effect on U.S. commerce is an element of the claim, then the motion would be properly treated under Rule 56 summary judgment standards. Summary judgment on the merits can be granted if, construing the facts against the moving party, there is no genuine issue of material fact and that party is entitled to judgment as a matter of law. In short, at this stage of the litigation — that is, when the court is considering a motion — the analysis differs if the issue is one of jurisdiction or an issue on the merits. We think it is fair to say that in this case the procedure employed will dictate the result. The appellants have made little effort to demonstrate that the district court’s findings of fact are clearly erroneous. They claim, however, that what we have here should be viewed as a motion for summary judgment on the merits. Under the summary judgment standard with the facts construed in their favor, they contend that the defendants’ motion should have been denied. The defendants, of course, contend that they should win under either standard, a proposition on which we need pass no judgment.
Over the years, the difficult issue of limiting the extraterritorial reach of the United States laws in international trade and international relations has received a good deal of attention. Despite the fact that, using language borrowed from the Foreign Commerce Clause of the Constitution, the Sherman Act itself prohibits agreements restraining “trade or commerce ... with foreign nations,” there has long been concern about overreaching under our antitrust laws. As far back as American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909), Justice Holmes said that the almost universal rule is that the “character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done.” American Banana’s strict territorial test was moderated, if not rejected, in United States v. Aluminum Co. of America, 148 F.2d 416 (2d Cir.1945). Judge Learned Hand was *947 writing for the Court of Appeals for the Second Circuit, sitting pursuant to 15 U.S.C. § 29, which at the time authorized the designation of a court of appeals as a court of last resort for certain antitrust cases. The issue was whether Congress intended to impose liability for conduct outside the United States and whether the Constitution permitted it to do so. The court recognized that it should not read the words of Congress “without regard to the limitations customarily observed by nations upon the exercise of their powers.” At 443. Creating what became known as the “effects test,” the court concluded that the Sherman Act must be limited to acts which were “intended to affect [U.S.] imports and did affect them.” Rejected was the notion that Congress intended “to punish all whom its courts can catch, for conduct which has no consequences within the United States.” At 443. The Supreme Court subsequently approved the effects test. See Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962).
Then FTAIA was enacted in 1982. There is some debate over the extent to which the Act simply codifies the “general understanding of when American antitrust law should be concerned about restraints abroad ...See 1A Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law, ¶ 272 (2d ed.2000). In Hartford Fire Insurance v. California, 509 U.S. 764, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993), the Court declined to decide whether FTAIA was a codification of prior law, but concluded that an agreement among foreign reinsurers and domestic insurers, under which the foreign reinsurers would refuse to cover certain American domestic insurance policies, met the effects test.
It is in Hartford, however, that Justice Scalia, in dissent, sets out the view that FTAIA does not go to subject matter jurisdiction at all. He perceived two distinct questions: whether the district court had jurisdiction, and whether the Sherman Act reaches the extraterritorial conduct alleged. His conclusion was that the district court had subject-matter jurisdiction, simply because the Sherman Act claim was not frivolous and 28 U.S.C. § 1331 gives the district court jurisdiction over cases “arising under” federal statutes. The second question, he said, “has nothing to do with the jurisdiction of the courts. It is a question of substantive law turning on regulatory power over the challenged conduct.” At 813, 113 S.Ct. 2891. If the plaintiff were to fail to prevail on this question, the case would be dismissed not for lack of subject matter jurisdiction, but rather on the merits because the plaintiff had failed to state a cause of action. Justice Scalia explained that what is involved is “legislative jurisdiction” or “jurisdiction to prescribe,” which refers to the authority of Congress to enact the law in the first place. The Sherman Act, tracking, as it does, the Commerce Clause, is well within legislative jurisdiction. Nevertheless, principles of international comity dictate how a statute will be interpreted: “Though it clearly has constitutional authority to do so, Congress is generally presumed not to have exceeded those customary international-law limits on jurisdiction to prescribe.” At 815, 113 S.Ct. 2891.
The majority in Hartford carries out the debate with Justice Scalia in footnotes. As to Justice Scalia’s contention that what is involved in the case is prescriptive, as opposed to subject-matter jurisdiction, Justice Souter says that the parties “for good reason” do not question prescriptive jurisdiction. He then quotes commentators who say that the Sherman Act is a “prime exampl[e] of the simultaneous exercise of prescriptive jurisdiction and grant of subject matter jurisdiction.” At 796 n. 22, 113 S.Ct. 2891. In explaining the role of comi *948 ty, Justice Souter says that comity comes into play “if at all, only after a court has determined that the acts complained of are subject to Sherman Act jurisdiction.” At 797 n. 24, 113 S.Ct. 2891. Principles of international comity did not prevent the exercise of jurisdiction in that case.
One could argue that in Hartford it is not entirely clear what the phrase “Sherman Act jurisdiction” means. After all, “Jurisdiction is a word of many, too many, meanings.” United States v. Vanness, 85 F.3d 661, 663, n. 2 (D.C.Cir.1996), quoted in Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). But it seems reasonable to conclude, especially in light of the footnotes, that what the Hartford Court refers to is the court’s subject-matter jurisdiction for Sherman Act claims.
That reading receives some support in domestic Sherman Act cases, which do not implicate FTAIA, but may shed some light by analogy. McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), was a private antitrust action, alleging that real estate brokers in New Orleans engaged in a price-fixing conspiracy. The issue before the Court was whether the Sherman Act extended to such a conspiracy. The procedural history shows that the district court had dismissed the case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court of Appeals for the Fifth Circuit said that the appropriate designation of the dismissal was for lack of subject-matter jurisdiction under Rule 12(b)(1) but, nevertheless, affirmed. The Supreme Court disagreed with the court of appeals on what is required for jurisdiction to exist but implicitly agreed that the case presented an issue of jurisdiction. The Court said:
To establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a substantial effect on interstate commerce generated by respondents’ brokerage activity.
At 242, 100 S.Ct. 502. The Court also said that despite “the breadth of Sherman Act prohibitions, jurisdiction may not be invoked under that statute unless the relevant aspect of interstate commerce is identified ....” At 242, 100 S.Ct. 502.
More recently, in Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991), the Court considered
whether the interstate commerce requirement of antitrust jurisdiction is satisfied by allegations that petitioners conspired to exclude respondent, a duly licensed and practicing physician and surgeon, from the market for ophthalmological services in Los Ange-les because he refused to follow an unnecessarily costly surgical procedure. [Emphasis added.]
The Court again had trouble agreeing on the precise answer to that question, as its 5-4 split shows, but said that the conspiracy at issue “has a sufficient nexus with interstate commerce to support federal jurisdiction.” At 333, 100 S.Ct. 502.
The Sherman Act and its FTAIA amendments are not the only statutes which present the dilemma regarding whether a statutory requirement is an element of a claim or a matter of subject-matter jurisdiction. In Gwaltney v. Chesapeake Bay Foundation, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), the Court determined that for subject-matter jurisdiction to exist under the Clean Water Act, 33 U.S.C. § 1251 et seq., a plaintiff need only make a good-faith allegation of a continuous or intermittent violation of the Act. Justice Scalia dissented, this time not because all the subject-matter jurisdiction a court needs is provided under § 1331, *949 but rather because “subject-matter jurisdiction can be called into question either by challenging the sufficiency of the allegation or by challenging the accuracy of the jurisdictional facts alleged.” At 68, 108 S.Ct. 376 [emphasis in the original]. A little over 10 years later, in Steel Company, the Court considered the Emergency Planning and Community Right-To-Know Act (EPCRA), 42 U.S.C. § 11046(a)(1). Justice Scalia, writing for the Court, and Justice Stevens, joined in part by Justices Souter and Ginsburg concurring in the judgment, debated, among other things, whether a provision of EPCRA was jurisdictional or an element of the claim. Looking to Givaltney, Justice Stevens thought it was jurisdictional; Justice Sca-lia dismissed Gwaltney as a “drive by” jurisdictional ruling. In the Title VII context we have determined that the requirement that the definition of employer as “a person ... who has fifteen or more employees” was an element of the claim, not a matter of the subject matter jurisdiction of the court. The plaintiff had presented “a non-frivolous claim under federal law; no more is necessary for subject-matter jurisdiction.” Sharpe v. Jefferson Distrib. Co., 148 F.3d 676, 677 (7th Cir.1998). The jurisdiction-versus-element-of-the-claim debate seems alive and well.
Turning back to FTAIA, we note that commentators tend to discuss FTAIA in terms of jurisdiction. See, e.g., P. Areeda & H. Hovenkamp, ¶ 273; Herbert Hovenkamp, Federal Antitrust Policy, § 21.2 (2d ed.). Referring directly to subject-matter jurisdiction, the ABA Section of Antitrust Law, Antitrust Law Developments (5th ed.2002), at 1121, states that “to establish subject matter jurisdiction under the FTAIA, a plaintiff must also show that ‘such effect’ — i.e., the direct, substantial, and reasonably foreseeable anticompetitive domestic effect — ‘gives rise to’ a Sherman Act claim.” In addition, the Department of Justice and the Federal Trade Commission both consider the statute jurisdictional. Regarding jurisdiction over conduct involving foreign commerce, the guidelines for the agencies state “[T]he jurisdictional limits of the Sherman Act and the FTC Act are delineated in the FTAIA.” Antitrust, Unfairness, Deception Policies and Guidelines, reprinted in 4 Trade Reg. Rep. (CCH) ¶ 13.107. The ABA explains that with “respect to subject matter jurisdiction, the International Antitrust Guidelines state that ‘anticompetitive conduct that affects U.S. domestic or foreign commerce may violate the U.S. antitrust laws regardless of where such conduct occurs or the nationality of the parties involved.’ ” Antitrust Law Developments, at 1120.
As we have said, this is our first foray into FTAIA. We have, however, considered the reach of the Sherman Act into foreign commerce prior to the enactment of FTAIA. In In re Uranium Antitrust Litigation, 617 F.2d 1248 (7th Cir.1980), we considered issues raised by the governments of Australia, Canada, South Africa, and Great Britain as to whether the district court could proceed in a case brought by Westinghouse Electric Corporation alleging antitrust violations against 26 foreign and domestic uranium producers. For our purposes, we need not delve into the weighty issues of that case beyond noting that we said at 1253:
We view the jurisdictional issue as two-pronged: (1) does subject matter jurisdiction exist; and (2) if so, should it be exercised?
However, we also determined in United States v. Martin, 147 F.3d 529 (7th Cir.1998), a criminal case involving the federal “bombing” statute, 18 U.S.C. § 844(1), that the requirement that the bombing have an effect on interstate commerce is not a matter of the court’s jurisdiction over the crime or the defendant, but rather an ele *950 ment of the crime. Relying on United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), Martin wanted to set aside his guilty plea because, he said, it did not waive jurisdictional defenses, and the requirement for an effect on interstate commerce is jurisdictional. We rejected that claim, saying that although the requirement is often referred to as jurisdictional, it is “simply one of the essential elements of § 844(1).” It is, we said, simply a “shorthand sense that without that nexus, there can be no federal crime ....” At 532, 115 S.Ct. 1624. As we learned in Lopez, the nexus to the Commerce Clause is of considerable importance, as a matter of legislative jurisdiction, when Congress seeks to federalize street crimes — crimes which are otherwise the province of the states. In those instances, it seems to us, the requirement for interstate commerce is a hook on which the crime hangs. Once Congress has made the proper findings that, say, a certain crime implicates interstate commerce in some way, proof of the interstate commerce requirement has, at least traditionally, been rather perfunctory. Criminal statutes of this type are far less than compelling analogies to FTAIA.
We see the purity of an argument that 28 U.S.C. § 1331 provides federal question jurisdiction for cases “arising under the Constitution, laws, or treaties of the United States” so that without more, the federal courts have jurisdiction over Sherman Act claims. It would follow, then, that any requirement for an effect on interstate commerce must be an element of the claim. We know, however, that nothing is quite that simple. For instance, a frivolous suit which charges a violation of a federal statute “arises under” federal law. Yet, because the suit is frivolous, subject matter jurisdiction over it is lacking. Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (“[A] suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.”). See also Crowley Cutlery Co. v. United States, 849 F.2d 273 (7th Cir.1988). On the other hand, it is also true that sometimes a reference to “jurisdiction” in statutes is merely, as we said in Martin, a shorthand way of referring to an element of the claim. Such references are a way of referring to that part of a statute which sets out the basis for legislative jurisdiction.
But with reference to FTAIA, the argument that the statute sets out an element of the claim or a basis for legislative jurisdiction has not gained approval. Even after the decision in Steel Company, the EPCRA case decided in 1998, courts of appeals continue to treat FTAIA as jurisdictional. Whatever their differences in interpretation of the Act or the effect it has on prior judge-made law, all have treated the issue as one of subject matter jurisdiction. See Kruman (review of the district court’s dismissal for lack of subject matter jurisdiction under FTAIA); Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420 (5th Cir.2001), cert. denied sub nom. Statoil ASA v. HeereMac v.o.f., 534 U.S. 1127, 122 S.Ct. 1059, 151 L.Ed.2d 967 (2002) (finding that the district court properly dismissed antitrust claim for lack of subject matter jurisdiction under FTAIA); Carpet Group (finding that FTAIA did not divest the court of subject matter jurisdiction on the claims presented); Filetech S.A. (finding that the district court should have looked to the factual matters presented to it regarding whether subject matter jurisdiction existed under FTAIA); Caribbean Broad. Sys., Ltd. v. Cable & Wireless, PLC, 148 F.3d *951 1080 (D.C.Cir.1998) (stating that a court has subject matter jurisdiction only to the extent that the complaint alleges that the challenged conduct has a “direct, substantial, and reasonably foreseeable effect” on domestic commerce under FTAIA). The latter court has revisited the issue recently to define the “jurisdictional reach of the federal antitrust laws.” Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 315 F.3d 338 (D.C.Cir.2003). The argument was whether Den Norske or Kruman set out the proper view of FTAIA’s jurisdictional reach. The court rejected both approaches, saying that its view of the statute falls “somewhere between the views of the Fifth and Second Circuits .... ” Holding that where the “anticompetitive conduct has the requisite harm on United States commerce, FTAIA permits suits by foreign plaintiffs who are injured solely by that conduct’s effect on foreign commerce,” the court found that “subject matter jurisdiction is proper” in the case before it. We simply cannot dismiss these cases as “drive-by” jurisdictional rulings.
In Hartford, as well, it is not likely that references to jurisdiction are really references to legislative, rather than subject-matter, jurisdiction. Justice Souter made it clear that he disagreed with Justice Scalia’s contention that under FTAIA what is at issue is legislative jurisdiction. To reiterate, he said:
JUSTICE SCALIA believes that what is at issue in this litigation is prescriptive, as opposed to subject-matter, jurisdiction .... The parties do not question prescriptive jurisdiction, however, and for good reason: it is well established that Congress has exercised such jurisdiction under the Sherman Act. See G. Born & D. Westin, International Civil Litigation in United States Courts 542, n. 5 (2d ed. 1992) (Sherman Act is a “prime exampl[e] of the simultaneous exercise of prescriptive jurisdiction and grant of subject matter jurisdiction”).
So, while it might seem desirable to have no messy extra jurisdictional requirements under some acts of Congress, but not others, that is not how our system necessarily works. There is no question that Congress has the power to limit the jurisdiction of the federal courts. Lauf v. E.G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872 (1938). Every federal court, other than the Supreme Court, derives its jurisdiction from Congress, which, within constitutional bounds, may withhold or restrict jurisdiction. Kline v. Burke Constr. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922). The Court has visited the “jurisdiction stripping” issue recently in the context of the Telecommunications Act of 1996, in which it considered whether federal courts have jurisdiction over a carrier’s claim that an order of a state utility commission violated federal law. The Court declined to consider whether 47 U.S.C. § 251(c) conferred jurisdiction, it “at least does not divest the district courts of their authority under 28 U.S.C. § 1331 .... ” Verizon Md., Inc. v. Public Serv. Comm’n of Md., 535 U.S. 635, 122 S.Ct. 1753, 1758, 152 L.Ed.2d 871 (2002). What is left unspoken is that Congress could divest the courts of jurisdiction if it chose to.
As we have said, the legislative history shows that jurisdiction stripping is what Congress had in mind in enacting FTAIA. The statute was enacted against a backdrop of almost 60 years of precedent which characterized the application of the Sherman Act to the conduct of foreign markets as a matter of subject matter jurisdiction. We must presume that Congress expects statutes to be read to conform with Supreme Court precedent. Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Also as we *952 have said, the courts of appeals had applied the pre-FTAIA effects test as a limit on subject matter jurisdiction.[1] Nothing in FTAIA hints that Congress intended to dramatically change this approach. In fact, the legislative history indicates otherwise. The House Report says that satisfying FTAIA would be “the predicate for antitrust jurisdiction.” It also says, “[t]his bill only establishes the standards necessary for assertion of United States Antitrust jurisdiction. The substantive antitrust issues on the merits of the plaintiffs’ claim would remain unchanged.” H.R.Rep. No. 97-686 at 11 (1982), U.S. Code Cong. & Admin. News at 2487, 2496. Perhaps that is why after FTAIA courts have continued to treat the issue as one of subject matter jurisdiction.
There are good policy reasons for the prevailing approach. The extraterritorial scope of our antitrust laws touches our relations with foreign governments, and so, it seems, it is prudent to tread softly in this area. If FTAIA sets out an issue on the merits, resolution of the issue could be delayed until late in the case, and the potential for a lawsuit to have an effect on foreign markets would exist while the case remained pending. In contrast, if this important issue goes to subject matter jurisdiction, it can be resolved early in the litigation. If missed early on, it can be resolved whenever it becomes clear that the alleged anticompetitive activity does not have a substantial effect on United States commerce. If the parties do not raise the issue, a judge has an obligation to raise it. Treating the matter as one of subject matter jurisdiction reduces the potential for offending the economic policies of other nations. In short, FTAIA limits the power of the United States courts (and private plaintiffs) from nosing about where they do not belong. And the power of the courts is precisely what subject matter jurisdiction is about. For all of these reasons, we find that the district court properly treated the issue as one of subject matter jurisdiction.
That being the case, we must determine whether the court’s findings of fact are clearly erroneous. In its analysis, the court examined thousands of pages of evidentiary materials which formed the basis for its findings of fact. The court found that there was virtually no evidence that the plaintiffs would have made any sales in the United States. They set out to produce a tuberculosis drug for India. Experts say that the main application for AB is to produce Ethambutol, which is primarily used in India. The Lederle division of American Home Products was at the relevant time the only company in the world that had FDA approval to sell Ethambutol in the United States. Lederle imported Ethambutol into the United States from Italy using a product that it buys in India. In fact, it appears that the very small amount of AB sold in the United States was used as an ingredient in a product for making rocket motors, not drugs. 3M used a very small amount for this purpose, purchasing less than 0.4 percent of the world’s AB production — or *953 $25,000 in total volume. But 3M* never conducted formal bidding for this small purchase and shows no signs of changing its supplier.
Other than saying that “there is ample evidence to support plaintiffs’ allegations,” plaintiffs do not tell us how the court’s findings are clearly erroneous. True, the plaintiffs outline the evidence reflecting their plans to manufacture the products for sale in the United States. Auid, in fact, it may be that there was evidence to support that position. But the district court is allowed on this motion to weigh the facts, and when it did, it found that plaintiffs
had no actual plans to sell AB in this country and that there would have been no significant AB sales opportunities for Plaintiffs in this country even if they had tried to sell AB here. For instance, Miller testified that he “had no conversation with any potential customers for AB in the United States.” Miller Dep. 413. Moreover, Shroff testified that he and his “marketing man” spoke with ten to twelve potential AB customers, all of which were located in India. Shroff Dep. 144-46,161-62.
At 1012. Plaintiffs’ own liability expert testified that AB sales in the United States would be “less than substantial.” Similar findings were made regarding the other chemicals involved. The plaintiffs do not point out how these findings were clearly erroneous, and our review leads us to conclude that they were not. With the dismissal of the federal claims, the dismissal of pendent state-law claims was also proper. Accordingly, the judgment of the district COUrt ÍS AFFIRMED.

. The dissent suggests, incorrectly we think, that our decision will move government prosecutors to avoid the Seventh Circuit when investigating criminal violations of the Sherman Act. We don't think so. But we add that if the dissent is correct, the government will not only have to avoid the Seventh Circuit, but also all the other circuits that say, as we do here, that the requirement of an effect on U.S. commerce relates to subject matter jurisdiction. Finally, we fail to see the harm to Sherman Act criminal prosecutions that concerns the dissent. If the government can’t prove to a judge a minimum requirement that activity alleged to be in violation of U.S. criminal law had an effect on U.S. commerce, it shouldn't be bringing a Sherman Act case in the first place.