## In the
# United States Court of Appeals
## For the Seventh Circuit
———————

No. 07-1126

SOFIA LOPEZ DE MAÑEZ, *et al.*,

*Plaintiffs,*

*v.*

BRIDGESTONE FIRESTONE
NORTH AMERICAN TIRE, LLC, *et al.*,

*Defendants-Appellees.*

APPEAL OF:

    LEONEL PEREZNIETO

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 03-5790-C-B/S, MDL No. 1373—**Sarah Evans Barker**, *Judge.*

———————

ARGUED SEPTEMBER 11, 2007—DECIDED JULY 11, 2008

———————

Before RIPPLE, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* This appeal arises out of one of the many cases that were filed against Ford Motor Company and Bridgestone/Firestone, Inc. (now known as Bridgestone Firestone North American Tire, LLC), after some Firestone tires installed on Ford Explorers exploded, often with catastrophic consequences. Although

most of those lawsuits involved U.S. citizens who were driving their cars within the United States, a certain number involved foreigners. This is one of the latter group: it was brought by the family of José Samuel Mañez-Reyes, who was killed in Veracruz, Mexico, in one such accident. In an earlier opinion, this court reviewed a decision by the district court to dismiss the *Mañez* litigation under the doctrine of *forum non conveniens,* on the ground that a forum in Mexico would be available and more appropriate. *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702 (7th Cir. 2005) (*Mañez I*).

The earlier appeal took an unexpected turn when the plaintiffs submitted documents indicating that the Fourth Court of First Instance for Civil Cases of the First Judicial District in Morelos, Mexico, had concluded (contrary to the district court's expectation) that it did not have jurisdiction over the case. In supplemental filings before this court, plaintiffs argued that this demonstrated conclusively that the courts of Mexico were not available to hear the case and thus that a dismissal for *forum non conveniens* was improper. See generally *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506-07 (1947) ("In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes critera for choice between them."). When we invited the defendants to respond to this new information, they raised serious questions about the proffered documents. We concluded that the best course of action was to remand the case to the district court for reconsideration of the question whether, in light of all the evidence, Mexico is an available forum.

The district court accordingly held an evidentiary hearing on remand to explore the circumstances sur-

rounding the Morelos court's decision. Ultimately, the court had to decide whether the plaintiffs brought that case in good faith and whether the Mexican court's decision was entitled to recognition in the U.S. action. The district court concluded that the Morelos judgment had indeed been procured in bad faith and thus was not subject to recognition. The court therefore reaffirmed its earlier decision to dismiss the *Mañez* litigation on the ground of *forum non conveniens.*

With that judgment in hand, defendants moved for an order imposing sanctions against plaintiffs' U.S. and Mexican lawyers. Initially, the district court refrained from taking that step, because it believed that any fraud that may have been perpetrated was directed to this court, not the district court. Upon reconsideration, however, the court concluded that the court of appeals no longer had jurisdiction over the motion for sanctions, because no proceeding was then pending there. In addition, the court noted that it, too, was arguably the victim of vexatious and unreasonable proceedings, as described in 28 U.S.C. § 1927. It therefore imposed a fine of $50,000 as a sanction against plaintiffs' U.S. lawyers, to be divided among the defendants in any way that defendants thought appropriate. In addition, the court singled out the appellant before us, Leonel Pereznieto-Castro, for a particular sanction:

> Further, Dr. Leonel Pereznieto, the apparent mastermind behind these frauds on the U.S. and Mexican courts, is ordered to pay over, as a personal sanction, the amount of one hundred thousand dollars ($100,000.00). Fifty thousand dollars ($50,000.00) of that amount is payable to Defendants as an additional offset against the expenses they incurred in

investigating the Morelos proceedings and litigating the remand issues and the second fifty thousand dollars is payable to the Clerk of this court as a sanction for the fraud perpetrated by him in this forum. So long as this monetary sanction remains unpaid in the full amount of $100,000, Leonel Pereznieto is and shall be barred from providing any testimony against any Defendant in this cause in any United States court. Further, in terms of resolving the remaining cases in this multidistrict litigation, any and all sworn assertions reflecting the views or opinions of Leonel Pereznieto, whether made by him directly or indirectly, shall be stricken and we shall not consider as authority cases where his testimony whether oral or written was relied upon as justification for the court's opinion.

The court concluded by ordering that its sanctions judgment should be issued under FED. R. CIV. P. 58(d), and that the dismissal of the case as a whole would be without prejudice. (Here and throughout this opinion we cite to the version of the Federal Rules of Civil Procedure that took effect on December 1, 2007, unless it appears that it would not be "just and practicable" to apply the new rules to this pending case.)

The fact that the dismissal was without prejudice raises the question whether the judgment before us is final for purposes of 28 U.S.C. § 1291. We conclude that it was, given the nature of a dismissal based on *forum non conveniens.* First, we note the obvious difference between dismissing a case on this ground and refusing to dismiss and thereby permitting the litigation to continue. The latter kind of order is nonfinal and does not fall within the narrow confines of the collateral order

doctrine. See *Van Cauwenberghe v. Biard,* 486 U.S. 517, 527 (1988). A dismissal, in contrast, ends the case before the court. The premise of a dismissal under the *forum non conveniens* doctrine, as we noted earlier, is that there is an alternative forum that is better suited to hear the case. Had the dismissal here been one "with prejudice," there would have been some question about plaintiffs' right to resort to that alternative forum; by stipulating that it was "without prejudice," the district court properly signaled that it intended no such limitation. See *In re Joint E. & S. Dists. Asbestos Litig.*, 22 F.3d 755, 762 n.13 (7th Cir. 1994) (stating that "[t]he grant of a motion to dismiss on the common law grounds of *forum non conveniens* is appealable," despite being without prejudice). Compare *Peters v. Welsh Dev. Agency*, 920 F.2d 438, 439 (7th Cir. 1990) (holding that the district court's order, which dismissed a complaint without prejudice for failure to prosecute but indicated that the case would be reinstated *in that same court* if plaintiff were to meet certain conditions, was not final and therefore not appealable).

In this context, therefore, the phrase "without prejudice" means that although the dismissal is "final" in the sense that plaintiffs are finished before the U.S. courts, they still are free to refile the case in another, appropriate forum, and (at least to the extent that a U.S. court is in a position to assure such a thing) such a refiling would not be subject to a defense based on former adjudication. See *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1303, 1306 (11th Cir. 2002) (stating that after a dismissal without prejudice on grounds of *forum non conveniens*, plaintiffs are "free to refile" in "any other jurisdiction which [would] entertain the case," and noting that an "appropriate forum" for refiling in *Esfeld* could be "the courts of

Italy, Vietnam, or Plaintiffs [*sic*] respective home states"). Because the underlying litigation is finished, nothing in *Cunningham v. Hamilton County*, 527 U.S. 198 (1999), which addressed interlocutory appeals from sanctions orders, would prevent Pereznieto from appealing (assuming for the sake of argument that he is best characterized as one of the lawyers for the plaintiffs, rather than an expert witness).

This situation is not unlike a dismissal for lack of personal or federal subject-matter jurisdiction, which, while foreclosing future litigation of the matter in the court issuing the order, does not preclude a plaintiff from refiling and litigating in a proper forum. See, *e.g.*, *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*, 8 F.3d 441, 448 (7th Cir. 1993) (taking appellate jurisdiction and affirming the district court's dismissal without prejudice on grounds of improper venue because of insufficient contacts to confer personal jurisdiction but noting that refiling in a proper venue remains an option); *Fuhrman v. Livaditis*, 611 F.2d 203, 204 (7th Cir. 1979) (same).

Returning to the case presently before us, it is Pereznieto who has appealed. His complaint is not about the dismissal of the underlying action, but instead is about the order imposing sanctions on him. This order, we conclude, is also final for purposes of appeal; the district court is finished with him, and the only thing that remains is for him to pay the fine that it imposed, unless he can obtain relief on appeal. See *United States v. Dowell*, 257 F.3d 694, 698 (7th Cir. 2001); *United States v. Kirschenbaum*, 156 F.3d 784, 794 (7th Cir. 1998). Beginning with fundamental jurisdictional arguments and moving on to others, he argues that the court's order was either beyond its competence, unauthorized, or an abuse of

discretion. We consider these points in turn, filling in the factual background as necessary.

**I**

A few more details about the conduct for which Pereznieto was sanctioned help to explain the district court's action. After the case was remanded to the district court, the parties spent nearly a year in discovery. The court then held a two-day evidentiary hearing. The evidence presented showed that plaintiffs' U.S. lawyers, Roger Reed and Alberto Guerrero, had hired Mexican lawyers on a contingent-fee basis after the initial appeal had been filed in this court, and that they did so for the express purpose of filing a deficient complaint in an improper Mexican court. The idea was to file something that the Morelos courts would dismiss, so that plaintiffs could present "proof" to this court that Mexico was not an available alternative forum. The Mexican attorney in charge of this strategy was Pereznieto—a Mexican citizen and attorney whom plaintiffs' U.S. lawyers knew because he previously had filed an expert declaration in support of their claims in the U.S. courts. Pereznieto in turn hired two other Mexican lawyers to assist him, Juan Carlos Guerrero-Valle and Rosa Maria Avila-Fernandez.

The district court found that the evidence, including a "smoking gun" email sent on January 14, 2005, showed that the Mexican attorneys improperly had used family connections and had *ex parte* contact with the Morelos judge in order to manipulate the system and ensure that the judge would "throw out the suit according to what we planned." Pereznieto, the court found, had "played a double role in this attempted fraud on the court," both by

orchestrating the proceedings in Morelos and by sub-
mitting an "expert affidavit" to the Seventh Circuit in
support of the plaintiffs' arguments while the initial
appeal was pending. At no time did Pereznieto disclose
the circumstances of the Mexican proceedings to the
U.S. courts, nor did he mention that he was representing
the plaintiffs on a contingent-fee basis in Mexico (in
itself, a lawful arrangement) while at the same time
giving sworn statements as an expert in the U.S. proceed-
ings. These findings provided the basis for the sanc-
tions order we set forth above.

## II

In his appeal, Pereznieto raises three principal argu-
ments: that the district court lacked jurisdiction to
impose sanctions against him; that the district court did
not observe the requirements of due process; and that
the court erred in its findings about the Mexican pro-
ceedings and Mexican law.

## A

We consider first Pereznieto's jurisdictional argument.
To the extent that he is challenging the district court's
subject-matter jurisdiction to investigate the circumstances
behind his filings and to impose sanctions for fraud or
misconduct, we reject his argument. In *Chambers v. NASCO,
Inc.*, 501 U.S. 32 (1991), the Supreme Court reaffirmed
the inherent power of the federal courts to address "a
full range of litigation abuses." *Id.* at 46. Although the
exercise of the inherent power may be limited by statute
or rule, *id.* at 47, it is still possible in appropriate circum-

stances for a court "to sanction bad-faith conduct by means of the inherent power" even if "that conduct could also be sanctioned under the statute or the Rules," *id.* at 50. No matter who allegedly commits a fraud on the court—a party, an attorney, or a nonparty witness—the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct.

Whether the court had authority under 28 U.S.C. § 1927 to punish someone in Pereznieto's position is another question. Section 1927 permits sanctions only against "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof." Pereznieto is neither, and so the court's sanction was not authorized by § 1927. That is not, however, a point that affects the court's jurisdiction; it simply means that the sanction must stand or fall on some other ground. The fact that some of the conduct that ultimately gave rise to the filings in the U.S. court took place outside the United States (here, in Mexico) does not deprive the court of its competence to adjudicate this matter. Compare *F. Hoffman-LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155, 175 (2004) (in an antitrust case, reserving judgment on the question whether U.S. law may apply if foreign conduct and domestic conduct are not independent of one another).

This case is not like *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942 (7th Cir. 2003) (*en banc*), in which this court found that the restrictions imposed by the Foreign Trade Antitrust Improvements Act (FTAIA), 15 U.S.C. § 6a, on the reach of the antitrust laws over conduct occurring outside the United States affect the subject-matter jurisdiction of the district court. Relying

on cases that had construed the FTAIA, the *en banc* court found that Congress, through that particular statute, had acted to limit the subject-matter jurisdiction of the federal courts. No such statute exists in our case. Moreover, here the district court was exercising its authority to protect the integrity of the proceedings occurring before it. The acts in question may have begun outside the United States, but the scheme decidedly came to fruition within the United States.

Insofar as Pereznieto is objecting to the court's exercise of personal jurisdiction, he runs into a somewhat different problem. He was not a defendant, "haled" into the U.S. federal district court against his will. See, *e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). Instead, he was hired in part as an expert witness and in part as co-counsel for the Mexican proceedings. He voluntarily submitted opinions to his U.S. counterparts, knowing that they would in turn submit them to the district court and this court in connection with the Ford/Firestone cases. The nature of a person's relation to the court matters, as the Supreme Court held in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). There the Court held that the Due Process Clause of the Fourteenth Amendment "need not and does not afford [absent class plaintiffs] as much protection from state-court jurisdiction as it does [absent defendants in non-class cases]." *Id.* at 811. At the same time, the Court stressed that due process protections appropriate to the person in question must be observed: "The Fourteenth Amendment does protect 'persons,' not 'defendants,' however, so absent plaintiffs as well as absent defendants are entitled to some protection from the jurisdiction of a forum State which seeks to adjudicate their claims." *Id.* What the Court

said about the Fourteenth Amendment and state-court jurisdiction applies with equal force to the Due Process Clause of the Fifth Amendment, for purposes of federal-court jurisdiction.

There are two questions here: first, to the extent that the district court imposed sanctions against Pereznieto for representations he made, directly or indirectly, to the district court or this court, is it permissible to conclude that Pereznieto submitted himself to the personal jurisdiction of the court for purposes of anything arising out of those filings; second, to the extent that the district court imposed sanctions against Pereznieto for actions he took before the Morelos courts, in Mexico, what, if anything, justifies bringing Pereznieto before the U.S. court?

In the affidavit he submitted in conjunction with the proceedings on remand, Pereznieto stated:

> 1. My involvement in this case, and others involving "roll over" cases against the Defendants here and others [*sic*], initially arose in consulting capacity based on experience and training in conflict of law, Mexican law, and particularly, issues of "territorial competence" of Mexican Courts (much akin to U.S. jurisdictional issues).

> 2. In this capacity I have consulted and/or provided declarations or opinions in 20 U.S. cases.

> * * *

> 4. However, in this case, US attorneys Reed, Guerrero and Dubose (hereinafter collectively "American Lawyers") approached me regarding initiation of litigation in Mexican Courts, first, to establish a Mexi-

can "estate", and, second, to pursue a claim of the estate in a Mexican Court.

* * *

10. I did send, with the other Mexican lawyers, the letter attached as Exhibit "B", which I understand was sent to the Court by the American Lawyers by transmittal letter Exhibit "C".

Although it is not entirely clear to which "Exhibit B" Pereznieto was referring in paragraph 10 of his affidavit, there is no doubt that Pereznieto allowed at least one document to be filed directly with a U.S. court. While *Mañez I* was pending in this court, Pereznieto filed an affidavit discussing the Morelos proceedings. It began with the caption of the case, showing our docket number (No. 04-1827), leaving no doubt that he meant to file the affidavit with this court; it concluded with Pereznieto's signature. The affidavit was signed on July 6, 2005, in Mexico City, with the statement that it was executed "under penalty of perjury under the laws of the State of Illinois, the United States of American, and Mexico."

The district court was entitled to exercise personal jurisdiction over Pereznieto (putting to one side for the moment questions of proper notice and proper service of papers) if Pereznieto had the kind of contacts with Indiana specified in its Trial Rule 4.4(A) (which serves as Indiana's long-arm provision, see *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 965 (Ind. 2006)) and had minimum contacts with Indiana such that the exercise of authority would be consistent with fair play and substantial justice. See FED. R. CIV. P. 4(k)(2)(A); *World-Wide Volkswagen*, 444 U.S. at 291-92. Indiana Trial Rule 4.4(A)(1) provides for jurisdiction over a nonresident over actions

arising from his having done any business in the state; Rule 4.4(A)(4) covers actions arising from the supply of services in the state. Either or both of those subsections describe Pereznieto's situation. From the standpoint of the federal constitution, the person's contacts with the state cannot be fortuitous; instead, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Because the issue before the court is tied directly to Pereznieto's activities with respect to the *Mañez* litigation, there is no need to consider whether his contacts with Indiana were so extensive as to justify so-called general jurisdiction. See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Here, it would be hard to imagine a closer link between the activities within a forum and the conduct for which a person is being asked to answer. The fact that the affidavit mentioned Illinois law, and the proceedings in the district court were occurring in Indiana, does not mean anything. The affidavit was filed in support of an appeal that sought to restore the case to the docket of the district court for the Southern District of Indiana. Looking strictly at adjudicatory competence, we conclude that the district court was entitled to exercise jurisdiction over Pereznieto in this manner.[1]

---

[1] The discussion in the text follows the well-established rule that the district court's jurisdiction over the parties in a diversity case is linked to the state's long-arm statute. Because we find that jurisdiction was proper under Indiana law, we save for another day the question whether the district court might also have relied on federal law in the proceedings

(continued...)

Although it is conceivable that one might argue that Pereznieto also consented to the court's jurisdiction, by the act of furnishing his affidavit to be filed in the Seventh Circuit, we prefer not to reach that question. It was plaintiffs' U.S. lawyers who actually submitted Pereznieto's affidavit to the district court. He never appeared personally, he never had his deposition taken (for this case) within the United States, nor in the end did he consent to a deposition in Mexico. We thus proceed on the basis only of specific adjudicatory jurisdiction, which supports the district court's power to resolve issues arising out of Pereznieto's actions directed to the Indiana litigation.

Finally, we consider the question whether the district court had any authority to evaluate Pereznieto's actions before the Mexican courts, apart from anything he reported back to the U.S. lawyers or courts. We think not (and, indeed, the district court may not have meant to do any such thing). Whether the proceedings in Morelos were conducted in an honest and upright manner is a matter for the Mexican judicial and bar authorities, not for us. We are not in a position to draw any conclusion, positive or negative, even though we are aware that the problem of corruption within the judicial sector is one that plagues scores of countries around the globe, as the 2007 Report of the organization Transparency International documents in detail. See http://www.transparency.org/publications/gcr/download_gcr (last visited Mar. 3, 2008). As the famous Operation Greylord investigation in Chicago

---

[1] (...continued)
against Pereznieto, on the theory that his actions were an affront to the federal court's own processes.

during the 1980s illustrated, courts in the United States are
not exempt from this plague. See http://www.fbi.gov/
page2/march04/greylord031504.htm (last visited Mar. 3,
2008). We therefore focus only on Pereznieto's actions
that were directed toward the proceedings in the United
States.

B

Pereznieto's central argument is that the proceedings
that led to the court's sanctions order against him did not
satisfy basic due process standards. He is supported in
this effort by the Consulate General of Mexico in
Chicago, appearing *amicus curiae* on behalf of the Ministry
of Foreign Affairs of the United Mexican States. A few
more background facts are important at this point.
Pereznieto emphasizes time and again that he was never
a party to the action before the district court, that he
did not appear as counsel in the district court, and that he
is not admitted to practice in the Southern District of
Indiana. He is a citizen and resident of Mexico. He also
points out that there was never a court order directing
him to do anything. Instead, when the case returned to
the district court after *Mañez I*, the assigned magistrate
judge stated, in connection with a possible deposition of
Pereznieto, that "this court likely has no authority to
require Mexican counsel to travel to the United States to
be deposed." Instead, the judge directed in Decem-
ber 2005 that he should be deposed in Mexico City.
Ford and Firestone noticed depositions in accordance
with that order, but they never attempted to serve any
subpoenas, court orders, letters of request, or letters
rogatory on him there. Prior to a court-ordered status
conference in mid-July 2006, Pereznieto and the other

Mexican lawyers notified plaintiffs' U.S. lawyers that they were refusing to be deposed. They cited both rules of professional secrecy and the risk of criminal penalties under Mexican law if they violated those rules. Later, Ford and Firestone listed the Mexican attorneys, including Pereznieto, as witnesses for the upcoming evidentiary hearing, but once again they did not follow up with subpoenas or other compulsory process. Indeed, they never served Pereznieto directly with a notice of the hearing, which had been scheduled for July 19, 2006.

One week before the hearing, defense counsel filed a motion requesting sanctions against *both* the U.S. lawyers and the Mexican lawyers, including Pereznieto. That motion was served on the U.S. lawyers, but not on Pereznieto. The court initially declined to address the motion, but it promised the U.S. lawyers that if the court changed its mind and decided to rule, they would be given an opportunity to respond before a decision was rendered. As matters unfolded, this did not happen. Instead, the court conducted its evidentiary hearing on the facts surrounding the Morelos litigation on September 5 and 6, 2006. Pereznieto was not present and was not represented by counsel at the hearing. The details of the evidence are not important here, as no one has appealed from the district court's November 14 decision to reaffirm its dismissal of the action based on *forum non conveniens*.

After the case was again dismissed, Ford and Firestone made a formal request for a ruling on their sanctions motion on December 6, 2006. Three days before the end of the 15-day period normally allowed by S.D. Ind. Local Rule 7.1(a) for a response to such a motion, on December 18, 2006, the court issued its order imposing sanctions and ordering entry of a final judgment. We have

already set forth the critical language from that order. The U.S. lawyers did not contest the order, but on January 12, 2007, Pereznieto appeared by counsel and filed a motion for relief from the sanctions; he supported his motion with an affidavit and offered to make himself available for testimony pursuant to the terms of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention"), Oct. 7, 1972, 23 U.S.T. 2555, 847 U.N.T.S. 231, reproduced at 28 U.S.C. § 1781 note. On January 16, 2007, Pereznieto (through newly-retained counsel) filed a timely notice of appeal. The district court later dismissed his motion for relief as moot, in light of the fact that it no longer had jurisdiction over the matter.

The defendants do not seriously dispute the fact that they never attempted to compel Pereznieto to appear before the district court. Instead, they stress the closeness of his relationship with the plaintiffs' U.S. attorneys—in effect, they say, he was a "joint venturer" with counsel for Mañez. As such, they argue, any notices that reached U.S. counsel also reached Pereznieto by operation of law, and U.S. counsel were *de facto* representatives of Pereznieto's interests before the district court. Through Mañez's U.S. counsel, Pereznieto received a copy of the notice of deposition and initially indicated that he would be willing to be deposed in Mexico. His later change of heart, defendants urge, permitted the district court to draw negative inferences, find facts against him, and impose the sanctions that it chose.

In analyzing the district court's sanctions against Pereznieto, we must draw a distinction between the $100,000 fine for which he is personally liable and the order barring his testimony (new or already submitted)

before any courts in the United States. We look first to the fine, and then to the testimonial bar.


1

As an initial matter, it is unclear how we should characterize the $100,000 fine. The court did not specify the exact nature of the order, although that in itself is unimportant, as it is the substance that matters. The order could have been several different things: (1) an adjudication of criminal contempt of court; (2) an adjudication of civil contempt; (3) a penalty under FED. R. CIV. P. 11 or 37 for submitting a misleading or evasive document; or (4) a penalty for acts that imposed needless costs on the court, imposed under the court's inherent authority. No matter which of these it was, however, the conclusion is inescapable that Pereznieto did not have adequate notice or a proper opportunity to respond. See generally *Autotech Tech. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 746-47 (7th Cir. 2007) (observing that due process requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation, and noting that this principle extends to both criminal and civil cases).

We start with the first two possibilities, criminal or civil contempt. The Supreme Court reviewed the difference between these two types of proceedings in *Mine Workers v. Bagwell*, 512 U.S. 821 (1994). Citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911), the Court stated that "a contempt sanction is considered

civil if it is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." 512 U.S. at 827-28 (internal quotation marks omitted). As the Ninth Circuit explained it, "[t]he primary purpose of criminal contempt is to punish past defiance of a court's judicial authority, thereby vindicating the court," while "[c]ivil contempt is characterized by the court's desire to compel obedience to a court order or to compensate the contemnor's adversary for the injuries which result from the noncompliance." *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 778 (9th Cir. 1983) (citation omitted). The line between the two forms of contempt is not always clear. As applied to fines, however, *Bagwell* held that "a 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." 512 U.S. at 829 (quoting *Penfield Co. of Cal. v. SEC,* 330 U.S. 585, 588 (1947)). Last, the *Bagwell* Court reviewed the procedures that due process requires before any particular contempt penalty may be imposed. *Id.* at 830-34. For that purpose, it distinguished between direct contempt, occurring in the court's presence, and indirect contempt, occurring out of court. *Id.* at 827 n.2.

Even for a direct contempt, the Court held, if the trial court "delays punishing a direct contempt until the completion of trial, . . . due process requires that the contemnor's rights to notice and a hearing be respected." *Id.* at 832 (citing *Taylor v. Hayes,* 418 U.S. 488 (1974)). Direct contempt "cannot be punished with serious criminal penalties absent the full protections of a criminal trial." *Id.* at 833; see FED. R. CRIM. P. 42(a). Even greater procedural

protections must accompany punishment for indirect contempt; "[s]ummary adjudication of indirect contempts is prohibited." *Bagwell*, 512 U.S. at 833.

A finding of civil contempt also requires adequate procedures. One court described the process as follows:

> To establish civil contempt, each of the following elements must be shown by clear and convincing evidence:
>
>> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (alterations in original). This court, too, emphasizes the importance of a particular decree or order as a predicate for civil contempt:

> To hold [a person] in civil contempt, the district court "must be able to point to a decree from the court which sets forth in specific detail an unequivocal command which the party in contempt violated."

*Grove Fresh Distribs., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 642 (7th Cir. 2002) (quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999)); see also 11A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2960 (2d ed. 1995).

We need not pursue the topic of contempt further, because we are convinced that it is a poor match for

what the district court did in this case. Because Pereznieto's actions were not taken in the presence of the court, anything he did would have to be viewed as an indirect contempt. No one argues that the court invoked the procedures spelled out in FED. R. CRIM. P. 42(a) for a prosecution for criminal contempt, and there is no hint in this record that Pereznieto received notice that this was what he was facing. If the $100,000 fine was intended instead to reflect a finding of civil contempt, the procedural problems are just as serious. The most glaring deficiency is the lack of any particular court decree or order that Pereznieto allegedly violated. Without any certainty about that, it is also impossible to know whether Pereznieto had actual or even constructive knowledge of the decree or that the decree somehow favored the defendants.

Another possibility is that the court's order rested on either Rule 11 or Rule 37 of the Federal Rules of Civil Procedure. It is easy, however, to eliminate Rule 11, because it applies only to attorneys or unrepresented parties, see Rule 11(a) & (c), and Pereznieto is neither. He participated in the U.S. proceeding as an expert witness, and so it is possible that his affidavit and other (unspecified) filings might be considered as reports for purposes of Rule 26(b)(4)(A). That rule does not specifically address misleading or fraudulent expert reports, but Rule 37 addresses the topic of discovery sanctions in general. Rule 37(a)(1) allows a party to move for a court order compelling discovery, and Rule 37(b) provides for sanctions against either parties or nonparties who disregard a court order. To outline this possibility is to show, once again, that it does not fit here. The court never issued an order to Pereznieto either requiring him to file the affidavit in this court or requiring him to explain

himself. It tried instead to arrange for a voluntary deposition in Mexico City, and when that fell through, it took no additional steps either to compel his appearance or to compel his compliance with any other court order. Thus, we must reject both Rule 11 and Rule 37 as possible sources of authority.

Last is the possibility of a penalty imposed under the court's inherent authority to punish Pereznieto for an act that inflicted needless costs on the court and the defendants. As we have already noted, courts retain inherent power to punish the full range of litigation abuses. *Chambers*, 501 U.S. at 46. This power is distinct from the contempt power. See *Matter of Maurice*, 73 F.3d 124, 127-28 (7th Cir. 1995). In *Maurice*, we discussed the difference between a sanction under FED. R. APP. P. 38 and contempt. Rule 38 authorizes the courts of appeals to "award just damages and single or double costs to the appellee" if it determines that an appeal is frivolous. (Notably, the court may do so only "after a separately filed motion or notice from the court and reasonable opportunity to respond.") We also explained that

> a fine for contempt of court . . . entails a violation of a judicial order, rather than a waste of time by taking frivolous steps, the domain of Rule 38. Ability to impose sanctions for acts that impose needless costs on other litigants is a longstanding power of federal courts.

73 F.3d at 128. All that means, however, is that the full panoply of procedures that attend contempt proceedings, either criminal or civil, are not necessary for Rule 38 or analogous sanctions. *Maurice* assuredly did not hold that sanctions could be imposed without either notice to the offending person or an opportunity to respond.

In short, while we have no doubt that the court possessed inherent authority to address the kind of abuse with which Pereznieto is charged, that does not mean that it could dispense with such fundamental incidents of due process as adequate notice and an opportunity to be heard. *Cf. In re Teknek, LLC,* 512 F.3d 342 (7th Cir. 2007) (holding that the bankruptcy rules and the Federal Rules of Civil Procedure require a nonparty to be served with process before being held in contempt). And the kind of casual notice that one can infer from this record that Pereznieto may have received is not good enough. In order to be adequate, the Supreme Court has held, a person is entitled to "notice reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Court also specified how much it expected of the person giving notice:

> But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

*Id.* at 315 (citation omitted).

Defendants take the position that their motion for sanctions sufficed both to give Pereznieto notice of that

possibility and to afford him the *opportunity* to be heard. It is neither their fault nor the court's, they continue, if Pereznieto let this chance slip away. Their motion identified him by name, sought sanctions against him personally, and detailed the events in Morelos in which he was directly involved. What defendants downplay, however, is the fact that they never served that motion on him directly. Nothing in the court record indicates that counsel for plaintiffs were also representing Pereznieto in his individual capacity, and so we cannot accept that service as a substitute. Nor is there anything that indicates an effort to serve Pereznieto directly in Mexico. Both the United States and Mexico are parties to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"), opened for signature Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163, reproduced at 28 U.S.C. App., FED. R. CIV. P. 4 note, as well as the Hague Evidence Convention. In the documents he filed seeking reconsideration of the district court's order, Pereznieto specifically said that he would make himself available in Mexico City for a deposition pursuant to the Evidence Convention. Beyond that, FED. R. CIV. P. 4(f) offers a number of options for service on an individual in a foreign country.

We conclude, therefore, that the part of the district court's order that imposed a personal fine of $100,000 on Pereznieto must be set aside for failure of proper service. The court is free if it wishes to conduct further proceedings on this matter on remand, if it concludes they are warranted.

2

The part of the district court's order that bars Pereznieto from providing any testimony in the Ford/Firestone cases before any court in the United States and that strikes all assertions that are already in the record is also problematic, although parts of it stand on stronger ground. District courts have broad discretion over the admission of evidence into the record, whether at the pretrial stage or during a trial. The findings that the court made about the contrived nature of the Morelos proceedings and the attempted fraud on the court amply support the court's decision to exclude these materials for purposes of the multi-district proceeding before it. Insofar as it purported to address other lawsuits, before other courts, however, the court's order was impermissibly overbroad. As applied to the Ford/Firestone cases, however, the order can be implemented easily. Pereznieto has a lesser stake in the possibility of acting as an expert for these consolidated cases, as compared with his interest in not being subject to a large monetary fine. Courts regularly reject expert testimony using the framework introduced by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and later incorporated in FED. R. EVID. 702. No one suggests that the rejected expert has a right to notice and an opportunity to be heard before the court renders such a decision. If this means that Pereznieto has breached his contract with the attorneys for the plaintiffs, that is a matter to be resolved between them.

That said, we think it best to vacate this part of the order as well. The testimonial bar is linked directly to the payment of the monetary sanction of $100,000 that must be set aside for lack of proper notice and opportunity to be heard. It is unclear what sanction or sanctions the dis-

trict court may decide are appropriate, if and when it has the benefit of a full adversary proceeding that includes Pereznieto. We note, in this connection, that Pereznieto has argued that the district court erred in its consideration of Mexican law and that it should have considered a wider range of materials. Should the district court decide to pursue this proceeding on remand, Pereznieto will be free to renew these arguments at an appropriate time.

## III

In summary, we conclude that the district court had subject-matter jurisdiction to decide whether there had been an abuse of process and that Pereznieto's contacts with the Indiana proceeding were sufficient to support personal jurisdiction over him. We further conclude that although the district court possesses inherent authority to address the kind of abuse with which Pereznieto is charged, Pereznieto did not receive constitutionally adequate notice and an opportunity to be heard in the proceeding that led to the $100,000 fine and other sanctions against him. We therefore VACATE the order and REMAND to the district court for reconsideration in light of this opinion. Each party shall bear its own costs on appeal.